JACK MENDELSON *et al.*, Plaintiffs-Appellants, *v.* DR. RONALD FEINGOLD, Defendant-Appellee.

Second District   No. 77-454

Opinion filed March 16, 1979.

228

Mel Cahan, of Lurie & Cahan, of Chicago, for appellants.

Edward A. Puisis and Robert L. Snook, both of Hall, Meyer, Fisher, Holmberg & Snook, of Waukegan, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiffs, Jack and Barbara Mendelson, appeal from orders of the Circuit Court of Lake County dismissing their medical malpractice action brought against defendant, Dr. Ronald Feingold. The sole issue presented on appeal is whether the trial court erred in dismissing the complaint as a discovery sanction pursuant to Supreme Court Rule 219(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 219(c)).

On November 12, 1975, plaintiffs filed a complaint which essentially alleged that Jack Mendelson, who was diabetic and had a kidney disorder, had consulted with defendant, his regular physician, regarding treatment of a skin condition by a dermatologist. Plaintiff inquired of defendant, at the suggestion of the dermatologist, whether the drug prednisone could be safely prescribed in treatment of the skin condition in light of Mendelson's other medical background. It was alleged that defendant negligently advised plaintiff he could safely take the drug when he knew or should have known that it was dangerous for one with Mendelson's medical history to do so and that Mendelson suffered severe kidney damage as a result thereof. Defendant answered on February 1, 1976, and discovery was undertaken by the parties.

Defendant took the depositions of each plaintiff and Jack Mendelson also responded to a series of interrogatories addressed to him. Plaintiffs sought to take the deposition of defendant but that matter was continued from time to time by defendant's counsel and by the trial court. Plaintiffs were never permitted to depose defendant or two other physicians who had treated Mendelson before dismissal of this case by the trial court.

On December 6, 1976, on defendant's motion, the trial court entered an order requiring plaintiffs to produce "a list of all expert witnesses that

plaintiffs intend to call at the trial of the above case, plus medical reports, memorandum of conversations, and correspondence thereof to be answered by Dec. 20, 1976." When plaintiffs failed to comply with the order defendant moved to dismiss the complaint, but the court extended the time of response to January 4, 1977, and further ordered that plaintiffs then file a statement under oath in reply to defendant's motion for production. Plaintiffs' attorney did file the unusual response to discovery required by the court and therein stated, on oath, that he had sent to defendant's attorney under date of December 20, 1976, a letter giving the name of plaintiffs' expert witness, Patrick L. Bentley, D.O., Ph.D., together with a two-page resume containing the doctor's address and his educational and employment background. The letter noted plaintiffs had requested a medical report from Dr. Bentley which would be provided to defendant when received. Plaintiffs' response further stated that no additional expert witnesses were contemplated for trial at that time and noted they were still unable to depose defendant and the two treating physicians, Doctors Simon and Lopez.

On January 7, 1977, plaintiffs requested a continuance of the trial then set for January 17, on the grounds that the depositions of defendant and the other two physicians had not yet been taken due to alleged dilatory tactics of defendant's counsel. On the same day defendant again moved to dismiss the cause or, alternately, to request plaintiffs to respond to additional interrogatories. The order of the trial court entered January 8 continued the trial of the case to February 14, set the discovery depositions of Doctors Simon and Lopez for January 19, and directed plaintiffs to furnish to defendant by January 15 a copy of Dr. Bentley's "opinion and evaluation of Dr. Feingold's care and treatment of the plaintiff."

On January 17, on motion of defendant, the trial court continued the scheduled depositions of Doctors Simon and Lopez to February 2 and the deposition of defendant, Dr. Feingold, to March 4. On February 8 plaintiffs requested further time in which to file the expert's report ordered by the trial court as Dr. Bentley had now declined to continue in the case as a witness. The court thereupon extended the time to file an expert's report to February 14 and plaintiff then filed with the court and served upon defendant a report dated February 10, 1977, by Bernard Ecanow, Ph.D., a professor of pharmaceutical sciences at the University of Illinois Medical Center. This report concluded that there could well be a relation between the ingestion of prednisone by Jack Mendelson and the acute kidney failure which followed.

On that same day, February 14, defendant presented a motion for summary judgment in his favor followed by a supplement to it filed on March 15. These essentially reviewed the complicated motion and

discovery history of the case to date, alleged that in medical malpractice actions such as this expert medical testimony is required in the fields of urology, pharmacology and internal medicine and that plaintiffs had failed to disclose the identity and furnish reports from their expert medical witnesses. No supporting affidavits were submitted with the motion. It apparently was heard by the trial court on March 9 and taken under advisement for decision. The record next discloses that on March 17 a motion to dismiss the complaint pursuant to Supreme Court Rule 219 was filed by defendant, without notice to plaintiffs, which contained essentially the same allegations as had the earlier motion for summary judgment with the added statement that plaintiffs had failed to comply with the discovery orders entered by the court on December 6, 1976, and January 8, 1977. On that same day the trial judge entered an order finding that the allegations of defendant's motion to dismiss were true and dismissed this cause "pursuant to Supreme Court Rule 219." The trial court never ruled on the motion for summary judgment apparently determining in the ex parte hearing that dismissal was the appropriate order to enter.

On April 6 plaintiffs moved to reinstate the cause and in support thereof submitted a list of five medical doctors they intended to call as expert witnesses in the trial of the case; one of these doctors was defendant Feingold whom plaintiffs still had not been permitted to depose. By an order entered June 3 the trial court directed that the cause not be reinstated unless within 30 days the plaintiffs obtained a detailed medical report from one of the five doctors they had listed "tending to indicate the matters to which said doctor will testify at trial and his opinion as to whether or not the defendant was guilty of medical malpractice in the care and treatment of the plaintiff, JACK MENDELSON, and setting forth in detail the basis for his opinion."

On July 1 plaintiffs renewed their motion to reinstate and asked that the order of June 1 be vacated. They further requested that the trial court order the appearance of Doctors Feingold, Silver, Simon and Lopez for depositions at a date agreeable to defendant's counsel. This motion also informed the court that plaintiffs had on June 28 furnished to defendant's counsel a detailed medical report in compliance with the June 1 order. Attached to the motion was a report regarding Jack Mendelson made by Frederick G. Berlinger, M.D., Director of the Section of Endocrinology of the Illinois Masonic Medical Center.

By its order entered that same day the trial court denied plaintiffs' motion to reinstate. The trial judge noted in the order that he had examined Dr. Berlinger's report and found it did not fulfill the requirements of the court. This appeal followed.

Plaintiffs contend: (1) that the discovery orders in question were not

authorized by the Supreme Court Rules and their failure or inability to comply would not justify dismissal of the cause of action as a sanction under Rule 219(c); (2) that although unauthorized, plaintiffs did in fact comply with the discovery orders of December 6, 1976, and January 8, 1977, upon which the trial court's dismissal order was based; and (3) that the trial court abused its discretion in dismissing the complaint as a sanction in this case.

Defendant contends, however, that the trial court had the authority to require plaintiffs to name a medical expert and to demonstrate to the court at the discovery stage that they could prove a prima facie case and, further, that the court was authorized to dismiss the complaint for plaintiffs' failure to do so.

■■ Pursuant to the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 58(1)) discovery in civil cases in Illinois is governed by the rules of the supreme court, which apply uniformly to medical malpractice and all other types of civil actions. Supreme Court Rules 201 through 219 (Ill. Rev. Stat. 1975, ch. 110A, pars. 201 through 219) describe the methods by which relevant information may be obtained in a pending action, by depositions, interrogatories, discovery or inspection of documents or property and physical or mental examinations of persons. The scope of discovery is broad and includes disclosure of "the existence, description, nature, custody, condition, and location of any documents or tangible things, and the identity and location of persons having knowledge of relevant facts." (Ill. Rev. Stat. 1975, ch. 110A, par. 201(b)(1).) None of the rules regulating discovery, however, authorizes the court to require a party to provide a witness, furnish a document or fashion some object (none of which then exist) for the benefit of an adverse party. These rules are directed only towards the disclosure of that which does exist, for example, tangible things or knowledge possessed by persons. The court considered a similar issue in *City Savings Association v. Mensik* (1970), 124 Ill. App. 2d 34, 42, 260 N.E.2d 110, 114, and said, "[i]t is a rule of universal application that a party who does not have possession and control of documents cannot be ordered to produce them for discovery. [Citations.]"

In *Redmond v. Central Community Hospital* (1978), 65 Ill. App. 3d 669, 382 N.E.2d 95, the court reversed an order dismissing plaintiff's malpractice action entered as a sanction under Rule 219(c) for failure to comply with a discovery order. There plaintiff had been directed to submit certain doctors, purported to be her medical experts, for the taking of depositions by defendant. When plaintiff failed to do so her complaint was dismissed. In rejecting this procedure the court noted:

"* * * [I]t is obvious that the rules were intended to provide a party the means to discover relevant matter from other parties by

motion or upon written request and, from third persons, through the use of subpoenas. However, we find no provision in Rules 201 through 218 allowing a party or a court to require a litigant to submit for deposition persons who are not under the control of that party and who necessarily would have to be subpoenaed to obtain their presence." 65 Ill. App. 3d 669, 674, 382 N.E.2d 95, 99.

■ In the instant case plaintiffs were essentially ordered by the court to engage a medical expert, submit to his examination and then tender his medical report to defendant. After dismissal, when plaintiffs sought reinstatement of the case, the order was enlarged requiring as a condition of reinstatement that a detailed medical report be submitted indicating the content of the doctor's expected testimony at trial, his opinion as to the negligence of defendant and a detailed basis for that opinion. Defendant does not refer us to any section of the supreme court rules pertaining to discovery which authorize the court to order a party to produce that which does not exist or is not within his possession or control. We find no such authority in the rules and believe that any failure by a party to comply with such orders cannot be deemed unreasonable and, therefore, subject to the sanctions of Rule 219(c).

⊙ 5  Defendant also relies on section 58(3) of the Civil Practice Act which now provides:

"(3)  A party shall not be required to furnish the names or addresses of his witnesses, except that upon motion of any party disclosure of the identity of expert witnesses shall be made to all parties and the court in sufficient time in advance of trial so as to insure a fair and equitable preparation of the case by all parties." (Ill. Rev. Stat. 1977, ch. 110, par. 58(3).)

At the time of the commencement of this litigation on November 12, 1975, however, section 58(3) provided only that "[a] party shall not be required to furnish the names and addresses of his witnesses." The subsequent amendment containing the language upon which defendant relies as authority for the discovery orders applies only to civil actions commenced after its September 19, 1976, effective date. (Ill. Rev. Stat. 1977, ch. 110, par. 58(3), as amended by "An Act in relation to the regulation of medical malpractice," Pub. Act 79-1434, §9, 1976 Ill. Laws 1357-59.) It necessarily follows that the trial court exceeded its authority when, on December 6, 1976, it ordered plaintiffs to furnish defendant with "a list of all expert witnesses that plaintiff intends to call in the trial of the above case" and dismissal of the cause of action for failure to comply could not be upheld. See *City of Joliet v. Fennewald* (1972), 3 Ill. App. 3d 899, 901, 278 N.E.2d 821, 823.

■ It is also apparent, however, plaintiffs did comply with the discovery orders of December 6, 1976, and January 8, 1977. On January 4, 1977, they

informed defendant and the trial court that they intended to call Patrick E. Bentley, an osteopathic physician, as a medical expert and would furnish his report to defendant when it was received by plaintiffs. Again, by the order of January 8, plaintiffs were directed to deliver a copy of Dr. Bentley's report to defendant and, as Bentley declined at this stage to further participate in the case, plaintiffs were given until February 14 "to file the report of its expert witness." While we do not regard the order as valid, as no expert's report then existed, plaintiffs complied with it by submitting a report by Bernard Ecanow, a pharmacologist, on February 14, 1977. As plaintiffs did furnish the names and reports of the expert witnesses then available to them, as required by the trial court, the sanction dismissing the action was without a basis in fact.

The question whether an action may be dismissed as a discovery sanction under Rule 219(c) has also been considered in *Schaefer v. Sippel* (1978), 58 Ill. App. 3d 816, 374 N.E.2d 1092. There plaintiff had been ordered to disclose the identity of his expert witness during a pretrial conference and to produce him for deposition. Although plaintiff informed the court he did not yet have an expert witness and might have to rely upon adverse examinations of the defendant doctors, the case was dismissed pursuant to Rule 219(c). The reviewing court noted it found no precedent requiring plaintiff to prove a prima facie case at the time of a pretrial conference. It also recognized plaintiff's inability to yet obtain an expert but stated that he might do so by the time of trial or, as he had indicated, he might rely upon the adverse testimony of defendants for the necessary expert testimony in that case. The court found that the plaintiff's inability to give the name of an expert witness at that stage was not an unwarranted disregard of the court's authority justifying dismissal of the cause of action under Rule 218 and 219(c). See also *Bell v. Board of Education* (1978), 67 Ill. App. 3d 402, 385 N.E.2d 84; *Hansen v. Skul* (1977), 54 Ill. App. 3d 1, 369 N.E.2d 267.

As we earlier noted, plaintiffs here were never permitted to depose either defendant or two treating physicians although they had attempted to do so as early as August 1976. The effect of the series of orders entered by the trial court was to require plaintiffs to obtain a medical expert witness who would state in writing that defendant was negligent in his treatment of Mr. Mendelson before plaintiffs would be allowed to proceed with their own discovery. Such orders are without authority under the discovery rules and the Civil Practice Act and effectively precluded the plaintiffs from establishing any part of the expert testimony which might be required in the trial of this case through testimony of defendant or the treating physicians. See *Plost v. Louis Weiss Memorial Hospital* (1978), 62 Ill. App. 3d 253, 378 N.E.2d 1176.

Defendant also relies upon *Hoover v. University of Chicago Hospitals* (1st Dist. 1977), 51 Ill. App. 3d 263, 366 N.E.2d 925, in which the trial court dismissed certain counts of the plaintiff's pro se complaint when she refused to obtain an expert witness to establish her malpractice allegations against the defendant physician. Plaintiff in *Hoover* contended she needed no expert medical testimony in that case but the court disagreed and affirmed the dismissal of those counts in the complaint which it found as a matter of law required such testimony. We find *Hoover* to be distinguishable from the case at bar and decline to follow it insofar as it suggests that the plaintiff in a malpractice action must establish at the discovery stage that he will be able to sustain the allegations of the complaint at trial.

Defendant also relies upon cases which have upheld the granting of summary judgment where facts have been established entitling them to summary judgment as a matter of law. (See, *e.g., Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003, 374 N.E.2d 1147.) While defendant here did initially move for summary judgment, the trial court did not rule upon that motion and it is not before us. We must note, however, that had the court granted summary judgment without first permitting plaintiff to depose defendant and the two treating physicians such judgment would necessarily be set aside as erroneous.

As we find the dismissal of the cause of action as a sanction under Rule 219(c) was unjustified, it will be reversed. The cause will be remanded to the trial court for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

GUILD, P. J., and RECHENMACHER, J., concur.