THOMAS CONRAD *et al.*, Plaintiffs-Appellants, *v.* CHRIST COMMUNITY HOSPITAL, a/k/a Evangelical Hospital Association of Chicago *et al.*, Defendants-Appellees.

First District (1st Division)   No. 78-291

Opinion filed October 9, 1979.

A. J. Hardiman, Ltd., of Chicago, for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Johnson, Cusack & Bell, Ltd., and Daniel P. Glecier, all of Chicago (D. Kendall Griffith, Michael J. Morrissey, Stephen R. Swofford, and Thomas H. Fegan, of counsel), for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiffs Thomas and Gertrude Conrad filed a complaint in three counts alleging malpractice arising out of an operation performed on Thomas Conrad at Christ Community Hospital on April 4, 1969. Pursuant to defendants' motions, the trial court entered summary judgment in favor of each defendant. In the same order the trial court denied a motion by plaintiffs to strike Christ Community Hospital's motion for summary judgment. From the above order plaintiffs now appeal and argue (1) that the trial court erred in entering summary judgment because there existed a genuine issue of fact that a jury should have resolved and (2) that the trial court erred in denying their motion to strike the defendant hospital's motion for summary judgment because that motion was based on incompetent testimony and legally insufficient.

We affirm.

Plaintiffs' complaint was filed in three counts. Count I alleged negligence against each of the doctors involved in the operation and the hospital where the operation was performed. Count II alleged wilful and

wanton conduct and prayed for punitive damages. Count III prayed for additional damages for loss of consortium. Count I alleged that the defendants, Doctors Bender, Cannon and Linn, performed an exploratory laparotomy on Thomas Conrad; that the defendants diagnosed the condition of Thomas Conrad as carcinoma (cancer) of the pancreas when in fact the plaintiff was suffering from no such condition. According to the complaint, the defendants failed to perform any, or sufficient, diagnostic tests on the pancreas. In particular, the complaint alleged defendants had failed to perform a biopsy of the pancreas. The complaint went on to allege that the defendant-doctors had failed to examine the gall bladder or common duct areas, and had failed to find obstructions in the common duct or the formation of gallstones.

The complaint also made specific allegations of negligence on the part of the defendant hospital. In particular, the complaint alleged that the hospital failed to properly diagnose the plaintiff's condition, review medical records, or require a biopsy or other laboratory studies. The complaint further alleged that the hospital allowed the other defendants to perform surgery when they were not competent and had violated certain rules of the Illinois Hospital Licensing Act, and certain standards for hospital accreditation.

Each of the defendants answered the complaint denying all the allegations of professional negligence. In addition, each defendant filed a motion for summary judgment arguing that there was no genuine issue of material fact concerning professional negligence. Each motion alleged in support of the above argument that in order to establish a *prima facie* case of malpractice plaintiffs must prove by means of expert testimony that defendants deviated from the required standard of medical care; that plaintiffs had indicated that Dr. Fanaipour, a medical doctor who had treated the plaintiff subsequent to defendants' treatment of plaintiff, would be their sole expert witness in the trial of the cause; and that Dr. Fanaipour could not testify that defendants had deviated from the required standard of care. Attached to the summary judgment motions was the deposition of Dr. Fanaipour. In his deposition Dr. Fanaipour testified that he first met Thomas Conrad in September of 1973 when he was admitted to South Suburban Hospital. Dr. Fanaipour examined the plaintiff and made an initial diagnosis of cholangitis associated with pancreatitis. The patient was released from the hospital and readmitted in April of 1974. During this second visit, Dr. Fanaipour performed an exploratory laparotomy which revealed that the patient was suffering from gallstones and dilation of the muscle surrounding the common duct. The liver appeared normal, and the head of the pancreas was soft. There was no evidence of pancreatitis or any tumor in the area of the head of the

pancreas. Dr. Fanaipour removed Mr. Conrad's gallbladder and dilated the common duct and the sphincter of Oddi. The patient did well and was discharged from the hospital.

Dr. Fanaipour further testified that a diagnosis of cancer of the pancreas can be made by gross observation if the cancer is advanced and has spread. If the cancer is in its early stages not much might be seen. One method of diagnosis of cancer of the pancreas is to perform a laparotomy. The diagnostic procedure during a laparotomy is to examine the organs, palpate them, and then get a biopsy. A needle or section biopsy may be performed. Some doctors are concerned about performing a biopsy of the pancreas because pancreatic juices could escape or malignant cells could be disseminated. It is standard practice to do a biopsy where a laparotomy is performed and cancer is suspected, unless the cancer is obvious.

If a surgeon performed a laparotomy and upon gross examination concluded that the patient was in an advanced stage of cancer of the head of the pancreas, it would depend upon the particular surgeon as to whether to perform a biopsy. Some do it and some do not. Dr. Fanaipour stated that he would do it, but that he would not speak for other doctors.

When asked whether it was a deviation from accepted standards of medical practice not to perform a biopsy when a surgeon performed a laparotomy and concluded upon gross examination that the patient had an advanced stage of cancer of the head of the pancreas, Dr. Fanaipour responded that it all depends on the surgeon's training. He stated that he usually tried to do a biopsy, but that he could not speak for everyone else. He stated that he would personally have to be present at the operation in order to see how everything looked before he could criticize a surgeon for not performing a biopsy. If a diagnosis of cancer of the pancreas was made by gross observation with a prognosis of a six-month life expectancy, the patient probably could live for a couple of years. If no biopsy were performed and the patient were still living after two years, the case should be reevaluated.

Plaintiffs first contend in this appeal that the trial court erred in entering summary judgment in defendants' favor. They contend that there exists a factual question as to the negligence of the defendant-doctors and that the deposition testimony of Dr. Fanaipour does not refute this fact. They further argue that they could prove their case by adverse examination of the defendants under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60) or by cross-examination of the defendants on standard texts and treatises. Defendants counter with the argument that summary judgment was properly entered because there was no genuine issue of material fact concerning defendants' breach of an accepted standard of medical care. We agree with the defendants.

■■ Plaintiffs must establish the breach of a duty in order to recover. This duty is the standard of care against which the defendants' conduct is to be measured and must, except in certain limited situations, be established by expert testimony. (See *Chiero v. Chicago Osteopathic Hospital* (1979), 74 Ill. App. 3d 166, 392 N.E.2d 203.) In the recent case of *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 381 N.E.2d 279, the supreme court reiterated that expert testimony is not required to establish the standard of care in those situations where the physician's conduct is so grossly negligent or the treatment so common that a layman could readily appraise it. The supreme court further noted, as follows, two additional exceptions the court has carved out to the requirement for expert testimony:

> "This court has recognized two exceptions to any requirement of expert testimony to establish the standard of care in medical malpractice cases in addition to the common-knowledge or gross-negligence exception. In *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, hospital licensing regulations, accreditation standards, and bylaws, like evidence of custom, were admissible as evidence of the standard of care by which the conduct of the defendant hospital would be judged. In *Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, this court held that explicit instructions furnished by the manufacturer for the proper manner of intravenous injection of a drug and the warning of hazards accompanying its improper administration provided the proof of the proper standards which would ordinarily be shown by expert medical testimony." 72 Ill. 2d 249, 257-58, 381 N.E.2d 279, 283.

In the case at bar, none of the above exceptions to the requirement for expert testimony are applicable. It is apparent from a review of the complaint that the negligence therein alleged is not so gross or the treatment so common that a layman could readily appraise it. Indeed, plaintiffs presented no such argument in the trial court and make no such argument on appeal. Likewise, plaintiffs presented the trial court with no hospital licensing regulations, accreditation standards or the like to establish the standard of care.

■■ Plaintiffs do argue on appeal that they could have proved their case by adverse examination of the defendants under section 60 of the Civil Practice Act or by cross-examination of the defendants on standard texts and treatises. However, no place does the record indicate that plaintiffs presented to the trial court citations of any texts to be used to cross-examine defendants on the standard of care. Plaintiffs also attached in their reply to the motion for summary judgment excerpts from the deposition testimony of Dr. Cannon. Nowhere in those excerpts is there any indication as to the standard of care or that defendants violated the

applicable standard of care. The mere assertion that the above methods of proof are available to establish the standard of care is not a substitute for actual proof and did not create an issue of fact so as to prevent the entry of summary judgment. (*Stevenson v. Nauton* (1979), 71 Ill. App. 3d 831, 390 N.E.2d 53.) What is clear from the record is that plaintiffs needed expert testimony to prove the applicable standard of care and were unable to present such testimony at the hearing on the motions for summary judgment.

■■ According to the Civil Practice Act, summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavit, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1977, ch. 110, par. 57(3).) Thus, while plaintiffs need not prove their case at the summary judgment stage, they must present some factual basis that would arguably entitle them to judgment under applicable law. (*Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80.) The instant plaintiffs are unable to present a factual basis which would entitle them to judgment under applicable law. As stated in *Stevenson v. Nauton* (1979), 71 Ill. App. 3d 831, 835, 390 N.E.2d 53, 57, "[w]here the plaintiff has failed to indicate that she has an expert medical opinion to sustain allegations or would be able to obtain such opinion in the future and was given numerous opportunities to secure such testimony summary judgment in favor of the defendant is proper." (See also *Sanders v. Frost* (1969), 112 Ill. App. 2d 234, 251 N.E.2d 105.) In the instant situation, plaintiffs had ample time to obtain an expert and indicated their only expert would be Dr. Fanaipour. It is apparent that he is unable to testify that defendants were negligent or as to the appropriate standard of care. The instant situation closely parallels both *Nauton* and *Frost*, and in accord with those cases we affirm the order of summary judgment.

■■ Plaintiffs also contend that the trial court erred in denying their motion to strike Christ Community Hospital's motion for summary judgment. They base their argument on the fact that Christ Community Hospital attached no affidavits to their motion for summary judgment. Plaintiffs acknowledge that the hospital's motion referred to the deposition of Dr. Fanaipour, but point out that in his deposition Dr. Fanaipour testified that he had not reviewed the hospital records and could not criticize the hospital. Plaintiffs conclude that the motion for summary judgment is based on incompetent testimony. As we have already noted, it was apparent at the hearing on the motions for summary judgment that plaintiffs needed expert testimony to prove their case, that plaintiffs did not have such testimony at the summary judgment hearing, and that they would be unable to obtain such testimony in the future. In

light of Dr. Fanaipour's testimony that he could not criticize the hospital, summary judgment was appropriate. The trial court did not err in denying plaintiffs' motion to strike the hospital's summary judgment motion.

For the foregoing reasons, we affirm the order of the circuit court of Cook County.

Order affirmed.

O'CONNOR and CAMPBELL, JJ., concur.