LAWRENCE MAST *et al.*, Plaintiffs-Appellants, *v.* ALBERT H. KRUSEMARK, JR., Defendant-Appellee.

Third District    No. 79-246

Opinion filed April 11, 1980.

108

Robert L. Caplan, of Chicago, for appellants.

James E. Garrison and James R. Fabrizio, both of O'Brien and Garrison, Ltd., of Joliet, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This appeal arises from the judgment order of the circuit court of La Salle County, entered upon a jury verdict in favor of the defendant-appellee, Albert Krusemark, and against the plaintiffs-appellants, Lawrence Mast and Joseph Yurkanin, in a legal malpractice case. The charge of malpractice resulted from a sale of campgrounds which Krusemark handled for the plaintiffs, and the subsequent retaking of these campgrounds by plaintiffs when the buyers defaulted on the payments for the campgrounds.

In March of 1973, plaintiffs were partners in the ownership of a KOA Kampgrounds, a franchised trailer park in the La Salle-Peru vacation area. About that time they attempted to sell the land and the business and negotiated terms with Stanley and Aurelies Tragas for the sale "on contract." After the terms were set, the plaintiffs advised Krusemark of the transaction and requested that he prepare the necessary documents to reflect the agreement of the parties. Krusemark agreed to do so.

Krusemark prepared a contract from a Cole form and had certain blanks and other information filled in. He then represented them for the balance of the transactions and matters that resulted from the execution of the contract, including the settlement of the case brought against them by the Tragases for forcible entry.

The contract provided for the total payment of $148,000. It provided for a down payment of $5,000, which was paid, and for a payment of $25,000 prior to June 1, 1973, which was paid. A payment of $30,000 was

due on June 1, 1973. The next payment was due in October 1973 as the beginning of annual payments in 15 equal payments until the balance of $93,000 was paid.

The June payment of $30,000 was not made on time. When Mast did not receive the payment he called Krusemark on June 6, 1973, who advised Mast to call Yurkanin. On June 13, 1973, the Tragases paid $6,000. Thereafter in June the Tragases made no further payments and plaintiffs became concerned because the Tragases were in possession of the campgrounds, not paying their campground bills, and not paying the plaintiffs. In addition, the Fourth of July holiday was approaching, which meant even more revenue for the delinquent Tragases. Mast asked for an appointment with Krusemark and went to his office on June 26, 1973, to discuss the matter.

At this meeting there was a discussion in which Krusemark suggested that Mast take over the campground. There is a dispute as to how specifically this tactic was discussed. Mast claims that Krusemark explained what a retaking was generally but did not explain the concept of retaking by trick or ruse as being wrong. Krusemark claims that the concept of retaking was discussed in great detail. Krusemark also contends that he told Mast that the only way to regain possession was through court proceedings, unless the Tragases would voluntarily agree to give back the property.

Mast and Krusemark agreed that a meeting should be scheduled for June 30, 1973, at Krusemark's office in Joliet at which the Tragases would be invited to attend with all of their financial documents showing their ability to make payments or secure payment on the contract. At this point the testimony of Mast and Krusemark diverge sharply. Mast contends that Krusemark suggested that Mast call the Tragases and get them off the property on June 30, 1973, by inviting them to Krusemark's office. Mast alleges that Krusemark's plan was to draw them off so that Mast could go to the campgrounds and retake them if the Tragases did not give adequate assurances of payment. In this manner the repossession would have been made without any violence; it would have been a peaceable retaking.

Krusemark vehemently denied that he initiated such a plan. He contended that the first time he knew Mast would not be at his office on June 30, 1973, was when Mast called from a tollbooth on Interstate 80 and said he would not be there. He also testified that at all times and in all conversations with Mast, it was understood that any repossession would be only by agreement with the Tragases.

In any event, Mast went to the campgrounds and retook possession while the Tragases were at Krusemark's office. Approximately two hours after the repossession the Tragases came to the campgrounds, and they

and Mast discussed how the Tragases could get the campgrounds back. On or about July 5, 1973, the plaintiffs received a letter from the Tragases' attorneys asserting that the plaintiffs had violated Illinois Revised Statutes, chapter 57, and demanding that plaintiffs not set foot on the property or interfere with the employees on the campground. On September 4, 1973, the Tragases sued Mast and Yurkanin for wrongful repossession of the campgrounds. The case was settled on April 22, 1975, and Mast and Yurkanin agreed to pay $20,000 to the Tragases.

The plaintiffs claimed this and various other alleged damages were the result of legal malpractice on the defendant's part. At trial the jury entered a verdict in favor of the defendant and plaintiffs appeal. On appeal, plaintiffs raise five issues: (1) whether the court erred in barring plaintiffs' expert from testifying; (2) whether the verdict was against the manifest weight of the evidence; (3) whether the defendant directed and participated in the repossession of the campgrounds; (4) whether the defendant as a matter of law failed to properly advise his clients when he had a duty to do so; and (5) whether it was improper for the defense to argue that the reputation of the defendant was at stake. We affirm.

Plaintiffs-appellants' first issue is whether the court erred in barring plaintiffs' expert witness from testifying. The case was filed on June 12, 1975. On October 30, 1975, the defendant filed interrogatories, one of which requested "the name, address, telephone number, title and position of each person who may be called or consulted as an expert witness in this cause." On February 6, 1976, plaintiffs filed answers to the interrogatories. In response to the abovementioned interrogatory, plaintiffs responded "Not determined yet."

On May 9, 1978, defendant filed a motion to bar the plaintiffs from the use of any expert witnesses not disclosed to that date at trial. The motion stated that under section 58 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 58) plaintiffs are required to disclose the identity of their expert witness in sufficient time in advance of trial so as to insure adequate protection and preparation of the case by the defendant. On May 11, 1978, plaintiffs first secured their expert witness and informed the defendant of that fact on Friday, May 12, 1978. On Monday, May 15, 1978, the court heard arguments on the motion to exclude plaintiffs' expert and ruled that the answer "Not determined yet" was not a completed answer, there was no reasonable excuse for the delay in securing or announcing the identity of an expert witness, and that it was a direct violation of section 58 of the Civil Practice Act. On those grounds the court refused to let plaintiffs' expert witness testify.

To decide whether the trial judge was correct in excluding plaintiffs' expert witness, it is first necessary to review the history of section 58(3) of the Civil Practice Act. At the time the instant case was filed, section 58(3)

(Ill. Rev. Stat. 1975, ch. 110, par. 58(3)) read: "A party shall not be required to furnish the names or addresses of his witnesses."

However, effective September 19, 1976, while the instant litigation was pending, section 58(3) (Ill. Rev. Stat. 1977, ch. 110, par. 58(3)) was amended to read:

> "A party shall not be required to furnish the names or addresses of his witnesses, except that upon motion of any party disclosure of the identity of expert witnesses shall be made to all parties and the court in sufficient time in advance of trial so as to insure a fair and equitable preparation of the case by all parties."

It is clear from the language in defendant's motion that defendant was relying on the amended version of section 58(3). It is equally clear from the record that the judge refused to let plaintiffs' expert witness testify because he felt there was a violation of the amended version of section 58(3). Refusal for this reason was error.

■■ The amendment applies only to civil actions filed after September 19, 1976, the effective date. (*Brown v. Highland Park Hospital* (1979), 69 Ill. App. 3d 769, 387 N.E.2d 1041.) Since the instant case was filed prior to the effective date of the amendment, it was clearly error to base a sanction on the amendment.

Having decided that it was error, the next question is whether or not it was harmless error. We believe that it was harmless.

Expert testimony is inadmissible unless it is necessary to aid the jury in arriving at a correct and just result. (*Payne v. Noles* (1972), 5 Ill. App. 3d 433, 283 N.E.2d 329.) In the instant case, the disputed issue at trial did not concern an interpretation of law or a standard of conduct, subjects on which expert testimony might be helpful. Both sides agree as to what the applicable law is. The central issue in the trial court was a factual dispute over what advice the defendant gave as an attorney to his clients and the manner in which they acted on that advice.

■■ The plaintiffs claim that the defendant had counseled and directed them to retake the campgrounds by means which included guile and trickery in contravention of the forcible entry and detainer statute. At trial the defendant agreed that a retaking by guile and trickery would be the equivalent of a forcible entry. There is no dispute that if the defendant had so counselled his clients he would have committed malpractice. However, the defendant at all times maintained that he never instructed the plaintiffs to retake the property in such a manner and that he was never aware that they intended to do so.

Thus, the dispute at trial was a factual one, which the jury was capable of deciding without expert testimony. Plaintiffs concede in their brief that "the main aspect of this case * * * is whether the defendant advised Mast to draw the Tragas' away from the campgrounds to his

office to avoid a breach of the peace when Mast repossessed the campgrounds; would Mast have been at the campgrounds but for the acts of the defendant; was the defendant active in directing the repossession of the campgrounds the way Mast did it on June 30, 1973." All these issues are questions of fact which do not require expert testimony. Plaintiffs admitted this in arguing before the trial judge the motion to exclude the expert witness. Counsel admitted then that this situation was similar to an attorney missing the statute of limitations and said "We really don't need an expert in this case." Therefore, we believe that the plaintiffs did not suffer any actual prejudice from the exclusion of the expert witness and hold that it was harmless error.

Plaintiffs' second and third issues on appeal, whether the verdict was against the manifest weight of the evidence and whether the defendant directed and participated in the repossession of the campgrounds, deal with determinations of fact made by the jury. There were numerous direct conflicts between the testimony of the two central witnesses, Mast and Krusemark. Krusemark claimed that he had nothing to do with the retaking of the property and Mast alleged that Krusemark masterminded the scheme. It is the province of the jury to weigh the evidence, draw inferences from the testimony and judge the credibility of witnesses. Where there is a controverted issue of fact the trial court is in a superior position to that of a court of review and its findings of fact will not be disturbed unless they are against the manifest weight of the evidence. In the instant case there was sufficient testimony on which the jury could base its findings, and we see no reason to disturb them.

■■ Plaintiffs' fourth issue on appeal is whether the defendant as a matter of law failed to properly advise his clients when he had a duty to do so. Plaintiffs allege that Krusemark knew that Mast was going to retake the campgrounds by trick and that, in view of this knowledge, his failure to tell Mast not to do so violated his duty to Mast and was per se negligence. However, there was sufficient evidence on which the jury could have found that Krusemark had no knowledge of Mast's intention to retake the campgrounds by trick. In the absence of such knowledge there was no breach of duty on Krusemark's part. Therefore, we see no reason to disturb the jury's verdict with respect to this issue.

■ Plaintiffs' final issue on appeal is whether it was improper for the defense to argue that the reputation of the defendant is at stake. During closing arguments, defense counsel stated, "The professional reputation of Mr. Krusemark is at stake, too." This remark was objected to by plaintiffs and the objection was overruled. Plaintiffs claim this was prejudicial error. We agree that it was error to permit this statement. (See *Torrez v. Raag* (1976), 43 Ill. App..3d 779, 357 N.E.2d 632.) However, we believe that in the instant case the error was harmless. We do not believe

this statement was adequate, by itself, to produce any significant prejudice to the plaintiffs. Absent substantial prejudice, a judgment will not be reversed on the basis of an improper remark in closing argument. *People v. Stahl* (1962), 26 Ill. 2d 403, 186 N.E.2d 349.

Plaintiffs contend that *Torrez v. Raag* mandates a reversal. We disagree. *Torrez* was a medical malpractice case in which defense counsel raised concern over the defendant's right to practice medicine. There was an objection by plaintiff's counsel, which was sustained. Plaintiff's post-trial motion for a new trial was granted by the trial judge "taking into account the manifest weight of the evidence, the attitude and demeanor of the witnesses, [and] the arguments of counsel in their closing remarks." The appellate court affirmed, saying that the trial court did not abuse its discretion.

In the instant case, the trial judge denied plaintiffs' post-trial motion. In contrast to *Torrez*, the trial judge specifically found that the jury's verdict was not contrary to the manifest weight of the evidence. The trial judge in *Torrez* reversed for reasons which are not presented here, and, therefore, we believe *Torrez* to be inapposite.

For the above mentioned reasons the judgment order of the circuit court of La Salle County is affirmed.

Affirmed.

ALLOY, P. J., and STENGEL, J., concur.