RICHARD BENNETT *et al.*, Plaintiffs-Appellants, *v.* DR. VAINO RAAG *et al.*,
Defendants-Appellees.

Second District    No. 81-194

Opinion filed January 22, 1982.

Goldstein, Goldberg and Fishman and Russell C. Green, of Block, Levy and Becker, both of Chicago, for appellants.

Oliver W. Gregory, Jr., and Stephen R. Swofford, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, and William F. Cunningham and Jeffery G. Eaton, both of O'Reilly and Cunningham, of Wheaton, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

This appeal arises from the granting of summary judgment, pursuant to section 57 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57), for the defendant doctors, Vaino Raag and T. G. Hiebert, in a medical malpractice suit brought against them and other defendants not parties to this appeal.

Plaintiff Richard Bennett and his wife, Betty, filed a six-count complaint against Dr. Raag, Dr. Hiebert, a third physician, and two medical clinics. In counts I and III Richard Bennett alleged that he consulted with and was treated by the defendants for pain in the lower back area; that in his care and treatment defendants negligently and improperly failed to diagnose, treat or inform him of his condition of cancer, failed to refer him to a specialist, and failed to administer proper tests and drugs for his treatment; that as a result of this negligent treatment his condition of cancer was discovered too late to arrest the carcinoma in question which required surgery in the nature of an abdominal perineal resection resulting in a colostomy; and that he sustained injury resulting therefrom. Betty Bennett sued the defendants in count VI for loss of consortium.

Both defendants filed interrogatories in early 1976 and requested, among other things, the names and addresses of all expert witnesses upon whom plaintiffs would rely at the time of trial. On August 2, 1976, in response to a motion by defendant Raag, the trial court entered an order allowing plaintiff 28 days to answer the interrogatories. Plaintiff filed his answer to Dr. Raag's interrogatories on August 31, 1976. He listed Damm & Associates, 2940 Noble Road, Cleveland, Ohio 44121 as his expert. On the same date, plaintiff also filed an answer to Dr. Hiebert's interrogatories and stated "None" to a similar question requesting names of expert witnesses. On September 22, 1976, the court ordered plaintiff to file a

proper response to Dr. Raag's interrogatory, "specifically naming each expert witness, as well as his specialty, within 28 days * * *." On December 22, 1977, Dr. Hiebert moved to dismiss the complaint or impose other sanctions pursuant to Supreme Court Rule 219(c) (73 Ill. 2d R. 219(c)) in that plaintiff had listed no experts in his answer to the interrogatory, nor had he replied to two letters requesting the names and addresses of plaintiff's experts. On December 22, 1977, the court again ordered plaintiff to supply the names and addresses of his expert witnesses within 28 days.

On April 10, 1978, Dr. Hiebert again moved to dismiss the cause for the failure of the plaintiff to disclose the identity of his expert witnesses. The court allowed plaintiff 30 days to furnish the name of his expert witness. Plaintiff did not disclose an expert witness within the allotted time. Throughout the remainder of 1978 and during 1979, defendants each made a motion to dismiss the cause for failure to reveal an expert witness. The trial court granted plaintiff two extensions for revealing an expert witness. The trial court granted defendant Hiebert's motion to dismiss, which order was vacated, after two continuances. The trial court set a date for pretrial conference with the express proviso that the case would be dismissed if plaintiff did not reveal his expert witness by that date. Finally, on September 14, 1979, the court entered an order barring the plaintiff from calling expert witnesses at trial. On October 15, 1979, the court issued an order stating that the September 14 order would be vacated if plaintiff disclosed his expert witness by October 29, 1979. On October 29, 1979, a further order was entered barring plaintiff from calling an expert witness at trial. On December 17, 1979, both Dr. Raag and Dr. Hiebert filed separate motions for summary judgment with their own supporting affidavits. Dr. Raag also included an affidavit of a nontreating doctor as an expert on the standard of care in the community. On February 26, 1980, the court denied these motions.

Throughout 1980, the court granted several continuances and provided several more opportunities for the plaintiff to supply the name of an expert witness. On November 24, 1980, Dr. Hiebert again moved for summary judgment. Dr. Raag also moved for summary judgment on December 29, 1980.

Both motions incorporated by reference the previously filed affidavits. The affidavit filed and signed by Dr. Hiebert stated that he first examined plaintiff on March 21, 1973, for complaints of pain in his left side, arm, leg, neck and back following an industrial accident at work; he saw him several subsequent times for the same complaints; he saw him again on November 21, 1973, at which time plaintiff first complained of anal and rectal pains and examinations disclosed hemorrhoids; upon testing he discovered enlarged, exterior hemorrhoids and a mass in the

area of internal hemorrhoids; he then referred plaintiff to a specialist who discovered "a moderately well-differentiated adenocarcinoma"; plaintiff was told that to save his life a complete colostomy would have to be performed by a specialist; plaintiff chose to wait for several weeks for the surgery performed by Dr. Tiesenga; the extent of the surgery and possible resulting impotence was explained to the plaintiff; and the surgery was then performed on January 9, 1974.

Dr. Raag's affidavit stated that he treated plaintiff for complaints of pain in the left arm and weakness in the left leg; that he diagnosed osteoarthritis at vertebral column with nerve root syndrome of the upper left and lower extremities; that he saw plaintiff on a periodic basis until November 12, 1973, for neck and lower back complaints; and that at no time did plaintiff exhibit any signs or symptoms of cancer of the rectum.

The affidavit of Dr. Albers, a nontreating physician, was also attached to Dr. Raag's motion for summary judgment. Dr. Albers stated that he reviewed certain medical records of plaintiff which he listed in his affidavit; that the treatment rendered by Dr. Raag for the condition of ill-being of plaintiff "conforms with the skill and care ordinarily used by physicians in the treatment and care of persons with similar conditions"; that he was familiar with the type of cancer plaintiff had and the records do not reveal any signs or symptoms of that type of cancer to warrant further treatment by Dr. Raag; and "that complaints of back pain are not a sign or symptom of the type of cancer experience [sic] by Richard Bennett."

The plaintiffs' reply to the motion for summary judgment did not contain any affidavits. It consisted of legal arguments against the motion and excerpts from Richard Bennett's deposition. Also, there are six pages of what appears to be questions and answers asked of Betty Bennett found in the record immediately following the reply. The excerpts from Richard Bennett's deposition essentially indicated that he was not told by Dr. Hiebert that the colostomy was permanent, that he was not told of any alternative treatment nor of any effect on his potency. The questions and answers contained on the six pages concern treatment by a doctor not a party to this appeal and Betty Bennett's statements about her husband's hemorrhoids. The trial court granted the motions for summary judgment on December 29, 1980, and denied a motion for rehearing.

Initially, we point out that plaintiffs have expressly stated that in this appeal they do not contest the correctness of the pretrial order entered pursuant to Supreme Court Rule 219(c) (73 Ill. 2d R.219(c)) which barred them from calling an expert to testify at trial. Therefore, we need not review the authority to enter that order which was imposed as a sanction for failure to comply with section 58(3) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 58(3)), which was amended, effective September

19, 1976, and made expressly applicable only to civil actions filed after that date. (See *Mast v. Krusemark* (1980), 83 Ill. App. 3d 107, 111, 403 N.E.2d 743; *Brown v. Highland Park Hospital* (1979), 69 Ill. App. 3d 769, 771, 387 N.E.2d 1041; *Mendelson v. Feingold* (1979), 69 Ill. App. 3d 227, 233, 387 N.E.2d 363.) The instant case was filed November 5, 1975. Nor have plaintiffs contended on appeal that they interpreted this pretrial order which barred their use of an expert at trial as precluding them from using affidavit or deposition evidence of an expert medical witness in their response to defendants' motion for summary judgment.

■■ Before addressing the issue of whether summary judgment was properly granted upon the affidavits offered in support of the defendants' motion for summary judgment and the plaintiffs' reply, we address several points which we consider perfunctorily raised by plaintiffs. First, plaintiffs contend that on a motion for summary judgment they are not required to prove a *prima facie* case. With that we agree. (*Schaefer v. Sippel* (1978), 58 Ill. App. 3d 816, 820, 374 N.E.2d 1092.) However, nowhere in the record provided us did the trial judge ever indicate that a *prima facie* case must be proved at the pretrial stage on a summary judgment motion. Accordingly, even though one of the defendant's summary judgment motions referred to that standard, the trial court did not apply it, and neither do we. Next, plaintiffs state that entry of summary judgment was an excessive and unwarranted punishment of the plaintiffs for not having an expert witness. Yet plaintiffs have not appealed that order barring their use of expert testimony at trial, nor is there anything in the record to indicate that the trial judge entered summary judgment as a sanction or on any basis other than the legal principles applicable to such a motion. (See *F. J. Pechman, Inc. v. Oldham* (1980), 86 Ill. App. 3d 1018, 1021-22, 408 N.E.2d 487.) Plaintiffs also assert that they did name an expert witness, Damm & Associates. Nevertheless, that disclosure was not in any way relevant to the trial court's ruling on the motions for summary judgment. Therefore, we summarily reject these contentions.

■■ ■ We now turn to the summary judgment issue. In considering a motion for summary judgment the court must consider the pleadings, depositions and admissions filed together with the affidavits, if any, submitted by the parties to determine whether a genuine issue as to any material facts remains outstanding; if not, then the court must decide if the moving party is entitled to judgment as a matter of law. (*Wainwright v. Truckenmiller* (1981), 96 Ill. App. 3d 1127, 1129-30, 421 N.E.2d 1026.) It is axiomatic that the purpose of summary judgment proceedings is not to try an issue of fact but to determine whether one exists. (*Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 393, 349 N.E.2d 1.) The right of the moving party must be free of doubt. (*Peterson v. B/W Controls, Inc.*

(1977), 50 Ill. App. 3d 1026, 1032, 366 N.E.2d 144.) Where facts contained in an affidavit in support of a motion for summary judgment are not contradicted by a counteraffidavit, such facts are admitted and must be taken as true. (*Heidelberger v. Jewel Companies, Inc.* (1974), 57 Ill. 2d 87, 92-93, 312 N.E.2d 601.) Even though a complaint and answer may purport to raise issues of material fact, if such issues are not further supported by evidentiary facts through affidavits or such, summary judgment is then appropriate. (*Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457.) "If the party moving for summary judgment supplies facts which, if not contradicted, would entitle such a party to a judgment as a matter of law, the opposing party cannot rely upon his complaint or answer alone to raise genuine issues of material fact." 57 Ill. 2d 376, 380, 313 N.E.2d 457.

■■■ It is now well established that summary judgment is appropriate in medical and other professional malpractice cases where there is no genuine issue as to any material fact that remains to be decided. (*Goldstein v. Kantor* (1981), 101 Ill. App. 3d 264, 427 N.E.2d 1322; *Prather v. Decatur Memorial Hospital* (1981), 95 Ill. App. 3d 470, 420 N.E.2d 810; *Buck v. Alton Memorial Hospital* (1980), 86 Ill. App. 3d 347, 407 N.E.2d 1067, *appeal denied; Conrad v. Christ Community Hospital* (1979), 77 Ill. App. 3d 337, 395 N.E.2d 1158; *Chiero v. Chicago Osteopathic Hospital* (1979), 74 Ill. App. 3d 166, 392 N.E.2d 203; *Stevenson v. Nauton* (1979), 71 Ill. App. 3d 831, 390 N.E.2d 53; *Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003, 374 N.E.2d 1147; *Kwak v. St. Anthony De Padua Hospital* (1977), 54 Ill. App. 3d 719, 369 N.E.2d 1346.) One element of a cause of action for medical malpractice is proof of the standard of care by which the defendant physician's conduct is to be measured. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 255, 381 N.E.2d 279.) As our supreme court in *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423, 328 N.E.2d 301, stated:

> "Except in certain limited situations not pertinent here, the appellate decisions of this State have held that the plaintiff, by use of expert testimony, must establish the standards of care against which the defendant doctor's conduct is measured. The plaintiff must then further prove by affirmative evidence that, judged in light of these standards, the doctor was unskillful or negligent and that his want of skill or care caused the injury to the plaintiff."

In light of the above authorities, we must determine if there was a genuine issue of material fact that remained to be tried considering the pleadings, defendant's affidavits and the deposition excerpts contained in the reply of the plaintiffs.

The complaint against Dr. Raag is essentially based on an alleged failure to diagnose, treat and refer plaintiff, Richard Bennett, to a specialist for his cancer. It also alleges that Dr. Raag "[c]arelessly,

negligently and improperly misinformed the plaintiff as to his condition of ill-being." The complaint against Dr. Hiebert alleges essentially the same, although stating additional allegations of improper administration and prescription of drugs, improper performing of a proctoscopy and improper treatment and testing of plaintiff. Dr. Raag's motion for summary judgment had attached to it his own affidavit and an affidavit of Dr. Richard K. Albers. Both affidavits reviewed the plaintiff's medical history and his treatment by Dr. Raag. Dr. Albers' affidavit indicated that the treatment by Dr. Raag conforms with the skill and care ordinarily used by physicians in the treatment and care of persons with similar conditions. Dr. Hiebert filed his own detailed affidavit of his treatment and diagnosis of plaintiff and his subsequent referral and surgery by another physician. The plaintiffs filed a reply which included excerpts from Richard Bennett's deposition. These excerpts indicate the plaintiffs were not informed that the colostomy was permanent nor advised of alternative forms of treatment other than surgery.

■■ On appeal plaintiffs for the first time object to the form and sufficiency of the defendants' affidavits. However, it is clear that the sufficiency of an affidavit cannot be tested for the first time on appeal where no objection was made either by motion to strike, or otherwise, in the trial court. *Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497; *Duffy v. Midlothian Country Club* (1980), 92 Ill. App. 3d 193, 199, 415 N.E.2d 1099.

■■ The plaintiffs have failed to present any factual basis to refute the specific assertions made in the affidavits filed by both defendants setting forth their competent treatment, diagnosis and subsequent referral of Richard Bennett to a specialist. Where the plaintiffs have failed to present evidence which would indicate expert medical opinion to sustain the allegations in their complaint as contrasted to the affidavits filed by the defendants, or that they would be able to obtain such opinion in the future, then summary judgment in favor of the defendants is proper. (*Goldstein v. Kantor* (1981), 101 Ill. App. 3d 264, 267-68, 427 N.E.2d 1322; *Conrad v. Christ Community Hospital* (1979), 77 Ill. App. 3d 337, 342, 395 N.E.2d 1158; *Stevenson v. Nauton* (1979), 71 Ill. App. 3d 831, 836, 390 N.E.2d 53.) In this record there is simply no evidence that plaintiffs would have been able to obtain expert medical evidence to refute the specifics contained in defendants' affidavits. Nor did plaintiffs request additional time to obtain such testimony at the time the motions for summary judgment were filed or heard. Suit was filed in 1975, and the record clearly reflects sufficient opportunity for plaintiffs to have completed discovery.

■■ Plaintiffs instead contend that the excerpts from Richard Bennett's deposition raise factual issues as to whether plaintiff was informed

adequately and truthfully as to the consequences of his operation. This contention is based upon the legal theory of lack of informed consent to the operation. Illinois recognizes a duty upon a physician to disclose to a patient a ·collateral risk about which the physician knew or should have known. (See *Taber v. Riordan* (1980), 83 Ill. App. 3d 900, 905, 403 N.E.2d 1349; *Miceikis v. Field* (1976), 37 Ill. App. 3d 763, 767-68, 347 N.E.2d 320; *Green v. Hussey* (1970), 127 Ill. App. 2d 174, 184, 262 N.E.2d 156.) In the case at bar, however, we do not find that plaintiffs have even alleged a cause of action based upon a theory of lack of informed consent to his operation. The only allegation which is even conceivably close to setting forth this theory is the assertion in the complaint that the defendants "[c]arelessly, negligently and improperly misinformed the plaintiff as to his condition of ill-being." Yet we can only conclude from a plain reading of this allegation that it goes to the misdiagnosis of plaintiff's condition rather than a lack of informed consent to the subsequent operation, which was not even performed by the defendant physicians. Since the issue of lack of informed consent was not raised by the pleadings below, the rule prohibiting the presentation of a new theory on appeal prohibits its consideration now. *Osborne v. Sprowls* (1981), 84 Ill. 2d 390, 398-99, 419 N.E.2d 913; *Graves v. North Shore Gas Co.* (1981), 98 Ill. App. 3d 964, 970, 424 N.E.2d 1279.

Plaintiffs also contend that by the granting of summary judgment they were improperly precluded from proving their case by other means, including the defendants' testimony at trial under section 60 (Ill. Rev. Stat. 1979, ch. 110, par. 60). Plaintiffs cite several cases, including our decision in *Mendelson v. Feingold* (1979), 69 Ill. App. 3d 227, 387 N.E.2d 363, to support their proposition that testimony of a defendant doctor may be sufficient to satisfy the requirement that there be expert testimony as to the issue of acceptable medical standards of care in a community. (See also *Plost v. Louis A. Weiss Memorial Hospital* (1978), 62 Ill. App. 3d 253, 378 N.E.2d 1176; *Schaefer v. Sippel* (1978), 58 Ill. App. 3d 816, 374 N.E.2d 1092.) What distinguishes those cases from the instant case is that they were held on appeal to be improperly dismissed on motions to dismiss without permitting the deposing of the defendant doctors and allowing the full range of pretrial discovery. As we noted in *Mendelson*, "plaintiffs here were never permitted to depose either defendant or two treating physicians although they had attempted to do so * * *." (69 Ill. App. 3d 227, 234, 387 N.E.2d 363.) In that case the effect of the series of orders entered by the trial court was to require plaintiffs to obtain a medical expert who would state in writing that the defendant was negligent in his treatment of Mr. Mendelson before plaintiffs would be allowed to proceed with their own discovery.

Such is not the case under the facts before us. This case was ulti-

mately decided by the trial court upon the motions for summary judgment, not upon application for sanctions pursuant to Rule 219(c). There is no allegation here of insufficient time to obtain available expert medical testimony to respond to the defendants' motions for summary judgment or to depose the defendant doctors. Plaintiffs' bare assertion that section 60 examination of defendants might establish the standard of care is not a substitute for actual proof so as to prevent the entry of summary judgment under these circumstances. See *Conrad v. Christ Community Hospital* (1979), 77 Ill. App. 3d 337, 342, 395 N.E.2d 1158; *Stevenson v. Nauton* (1979), 71 Ill. App. 3d 831, 835-36, 390 N.E.2d 53.

■■ In view of the detailed, uncontradicted affidavits filed by the defendants which effectively countered the general material allegations of the complaint, no genuine issue of material fact remained to be decided. The plaintiffs failed to present any medical evidence that defendants were negligent or that they violated the appropriate standard of care necessary to rebut the defendants' affidavits. In these circumstances, the granting of summary judgment for defendants by the court below was proper. *Goldstein v. Kantor* (1981), 101 Ill. App. 3d 264, 427 N.E.2d 1322; *Prather v. Decatur Memorial Hospital* (1981), 95 Ill. App. 3d 470, 420 N.E.2d 810; *Conrad v. Christ Community Hospital* (1979), 77 Ill. App. 3d 337, 395 N.E.2d 1158; *Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003, 347 N.E. 1147.

For the foregoing reasons, the judgment below is affirmed.

Affirmed.

LINDBERG and NASH, JJ., concur.