(No. 46029.—

ELLIOT HEIDELBERGER *et al.,* Appellees, v. JEWEL COMPANIES, INC., *et al.,* Appellants.

*Opinion filed March 29, 1974.*

Theodore A. Groenke, Wilber H. Boies, and McDermott, Will & Emery, of Chicago, for appellants.

Elliot Heidelberger, *pro se,* and Donald Liebsker, Robert Greenburg, Edward Morris, and William J. Harte, all of Chicago, for appellee Elliot Heidelberger.

Francis E. Goodman and Joseph F. Phelan, of Chicago, for appellees Mary Jo Neville *et al.*

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

In two class actions, which were consolidated for trial in the circuit court of Cook County, plaintiffs sought injunctive relief and a refund of check-cashing fees paid to defendant, Jewel Companies, Inc. The complaints alleged as a basis for the relief sought that defendant's cashing of checks for persons in its grocery stores for a fee of five cents per check constituted the operation of a community currency exchange for which defendant was not licensed under the Community Currency Exchange Act (Ill. Rev. Stat. 1971, ch. 16½, par. 30 *et seq.*). Defendant's motion for summary judgment was denied by the circuit court, and the appellate court thereafter allowed a petition for leave to appeal under our Rule 308 (50 Ill.2d R. 308) for the purpose of considering questions of law as to which it was found by the trial judge that there were substantial grounds for differences of opinion and that immediate appeal might materially advance the ultimate termination of the litigation. We transferred that appeal to this court under Rule 302(b).

The statutory provisions which are determinative of the issues presented by this case are found in sections .01 and 1 of the Community Currency Exchange Act. Section .01 includes various findings and declarations pertaining to community currency exchanges:

> "that the community currency exchange business, as hereinafter defined in Section 1, has become so widespread since the bank holiday in 1933, and so extensively and intimately integrated with the financial institutions of this State that it is affected with a public interest and should be licensed and regulated as a business affecting the convenience, general welfare, and economic interest of the people of this State;

that no community currency exchange should be operated without a license, or otherwise than in accordance with the regulations provided in, or to be provided pursuant to this Act;

that the number of community currency exchanges should be limited in accordance with the needs of the communities they are to serve, and in accordance with the provisions of this Act;

\* \* \*

that it is in the public interest to promote and foster the community currency exchange business and to assure the financial stability thereof;

\* \* \*".

The term "community currency exchange" is defined in section 1 as:

"\*\*\* any person, firm, association, partnership or corporation, except an ambulatory currency exchange as hereinafter defined, banks incorporated under the laws of this State and National Banks organized pursuant to the laws of the United States, engaged in the business or service of, and providing facilities for, cashing checks, drafts, money orders or other evidences of money acceptable to such community currency exchange, for a fee or service charge or other consideration \*\*\*."

The same section also includes an exemption for retailers in the following language:

"Nothing in this Act shall be held to apply to any person, firm, association, partnership, or corporation \*\*\* engaged in the business of selling tangible personal property at retail who, in the course of such business and only as an incident thereto, cashes checks, drafts, money orders or other evidences of money \*\*\*." Ill. Rev. Stat. 1971, ch. 16½, par. 31.

With respect to the intended scope of the Act and the exemptions contained therein, this court observed in *Thillens, Inc. v. Morey* (1957), 11 Ill.2d 579: "It is apparent from the act in question that the purpose of the legislature in adopting the act was to protect the public when dealing with institutions, both ambulatory and otherwise, primarily engaged in the business of furnishing

check cashing and currency exchange services." The court went on to state that the exemptions contained in section 1 "refer to businesses not primarily engaged in currency exchange or check cashing, but refer to businesses whose primary business is something different, *viz.*, transportation of another's valuables for hire, or retail sales. In each type of exempted business it is recognized that incidentally checks may be cashed." 11 Ill.2d at 595.

Jewel Companies, Inc., and its predecessors have been engaged in the retail grocery business in the State of Illinois since the year 1932 and have cashed checks for their customers since the late 1930's. This practice first began with the cashing of payroll checks for customers known by the various store managers during a period when there were few available banks or other places to cash checks. It has now expanded to include also the cashing of personal checks for an increasing number of persons in defendant's stores.

For a number of years Jewel has followed a practice of requiring persons wishing to cash checks at their stores to apply to the management for check-cashing privileges. The current procedures consist of the applicant supplying various information to the store about himself, his employer, and his bank. Upon verification of the information and approval by the store's management, the customer is issued a check-cashing identification card for use in the store. When a customer purchases merchandise and presents a check for the exact amount of his purchase, the check is accepted at the check-out counter upon presentation of his check-cashing identification card or other satisfactory identification. In similar fashion, customers may also present at the check-out counter a check which does not exceed the amount of the merchandise purchased by more than $10 and receive cash for the difference. In either of these cases, no fee is charged for accepting the customer's check. However, in the event the check exceeds the price of the goods purchased by more than $10 or in

the event a person wishes to receive only cash in exchange for a check, he is required to present his check and his check-cashing identification card at the store's "accommodation desk" and pay a check-cashing fee of five cents per check. A record is kept at the accommodation desk of the amount and date of each check cashed.

The number of persons utilizing Jewel's check-cashing service and the dollar amount of checks cashed is substantial. In the newer suburban areas, for example, more than 75% of all Jewel grocery customers cash checks at the accommodation desk. However, the check-cashing service is operated at a loss, with fees derived therefrom covering only about half of the expenses. Annual losses from the service are approximately $1,000,000.

Defendant asserted in its motion for summary judgment that it was not subject to the licensing requirements of the Community Currency Exchange Act since it was specifically exempted therefrom under the retailer's exemption. In determining the applicability of this exemption, there can be no question but that Jewel is "engaged in the business of selling tangible personal property at retail." However, the fundamental question upon which the parties disagree is whether Jewel's check-cashing services are conducted "in the course of such business and only as an incident thereto" within the meaning of the exemption. Plaintiffs argue that the exemption was intended to apply only to retailers who cash checks as an accommodation to its customers without charging any fee. In so arguing, they refer to the fact that the exemption refers to retailers who "cash checks" but not to retailers who cash checks for a fee, service charge or other consideration. They contend that had the legislature intended the exemption to apply to retailers who charge a fee the language of the statute would have specifically so indicated. In addition to the foregoing contentions with respect to the language of the statute itself, plaintiffs argue that the combined factors of Jewel's charging a fee at an

accommodation desk in cashing checks for a substantial number of persons precludes application of the exemption, since such activity constitutes a separate business which cannot be construed as being conducted in the course of its retail business and only as an incident thereto.

In our opinion, the plaintiffs' proposed construction of the statute would place a limitation on the retailer's exemption which the legislature did not intend. The language of the statute speaks for itself in providing that nothing in this Act shall be held to apply to retailers "who, in the course of such business and only as an incident thereto, cash checks, drafts, money orders or other evidences of money." Nothing is said about limiting the exemption to only those retailers who do not charge a fee for check cashing, and we do not concur with plaintiffs that such a limitation must necessarily be implied from the language of the exemption. In our opinion the converse of plaintiffs' argument is applicable—if the legislature had intended to limit the exemption it would have so stated rather than defining the exemption in broad terms as applying to retailers who "cash checks."

· As previously noted, this appeal was allowed as an interlocutory appeal under our Rule 308, which would normally result in a remand for further proceedings in the trial court. However, our resolution of the questions presented in this appeal requires consideration of the further question whether the trial court erred in not granting summary judgment for defendant. Pursuant to section 57 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 57) summary judgment shall be rendered upon motion if the pleadings, depositions and admissions on file, together with the supporting affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Where facts contained in the affidavit in support of a motion for summary judgment are not contradicted by counteraffidavit, such facts are admitted

and must be taken as true. *Fooden v. Board of Governors of State Colleges and Universities* (1971), 48 Ill.2d 580.

A review of the pleadings and the uncontradicted affidavit in support of the motion for summary judgment leads us to the conclusion that summary judgment for defendant should have been granted. As previously indicated, there was no issue whatsoever as to the fact that Jewel operated a large number of grocery stores throughout the Chicago area and was engaged primarily in the business of retail grocery sales. Furthermore, we do not believe that there was any genuine issue as to any material fact concerning the details of the check-cashing service provided by Jewel at its various stores, and, in our opinion, the pleadings and affidavit clearly establish that such service was performed in the course of its retail business and only as an incident thereto within the meaning of the retailer's exemption of the Community Currency Exchange Act. Even though the check cashing was conducted at an "accommodation desk," we do not concur with plaintiffs' argument that the check-cashing service was operated as a separate and distinct business. The affidavit filed by defendant in support of its motion for summary judgment sets forth facts describing how the check-cashing service evolved over a period of years leading to the use of an accommodation desk to facilitate movement through the check-out counters and to provide an appropriate place for check-cashing customers to be served. The incidental character of the check-cashing service is established by the advertising and operation of the service as an inducement to customers to shop at Jewel, the convenience aspect of the service insofar as customers are concerned, the method of charging a flat fee irrespective of the amount of the check cashed, the fact that the service is operated at a substantial loss and the general procedures followed by Jewel in conducting the service. Notwithstanding plaintiffs' contentions to the contrary, we are not persuaded that the possibility that persons might cash checks at the

accommodation desk without later purchasing groceries destroys the incidental nature of the service here rendered.

Since it does not appear that any useful purpose would be served by remanding for further hearings, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for entry of summary judgment in favor of defendant.

*Reversed and remanded,*
*with directions.*