THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* B. COLEMAN CORPORATION *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 76-1644

Opinion filed February 15, 1978.

William Henning Rubin, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Myra J. Brown, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendants, B. Coleman Corporation and two of its officers, were each charged by ten complaints with the offense of operating a community currency exchange without a license in violation of the community currency exchange act. (Ill. Rev. Stat. 1975, ch. 16½, par. 32.) After a trial at which the parties stipulated to all relevant facts and presented oral arguments, each defendant was found guilty on the ten complaints. Each defendant was required to pay a fine on one charge and the fines were suspended on the remaining charges. Defendant corporation was fined $250, and the individual defendants were fined $105.

The pertinent stipulated facts are as follows: Defendants as agents of the American Express Company and the Travelers Express Company are licensed under the Sale of Exchange Act. (Ill. Rev. Stat. 1975, ch. 16½, par. 301 et seq.) Defendants are not licensed under the currency exchange act which defines "currency exchange" as any person or entity "engaged in the business or service of ° ° ° cashing checks, drafts, money orders or any other evidences of money acceptable to such community currency exchange, for a fee or service charge or other consideration ° ° °." (Ill. Rev. Stat. 1975, ch. 16½, par. 31.) During the period from October 19, 1974, through December 1975, defendants issued 5,480 money orders and travelers checks. During that same period defendants cashed 4,500 checks worth approximately $200,000 for a graduated fee averaging 75 cents a check. The Illinois Department of Revenue issued defendants a certificate of registration and a sales tax number.

The trial court found that the Currency Exchange Act required anyone cashing checks for a fee obtain a license. The court also held that the Sale of Exchange Act and the currency exchange act were distinct regulatory schemes aimed at separate activities. Therefore, a license obtained under the Sale of Exchange Act did not entitle defendants to perform the activities regulated by the currency exchange act. The court concluded that defendants, licensed under the Sale of Exchange Act, could cash

checks received as payment for exchange, but could not cash checks for a graduated fee as a separate service.

■■ Defendants first contend that the trial court erred in finding that their license under the Sale of Exchange Act did not entitle them to charge a graduated fee solely for the service of cashing checks and independently of issuing exchange. The Sale of Exchange Act regulates the sale or issuance of said checks, drafts, money orders or other instruments for the transmission or payment of money. Section 3 of the Act defines "issuing" as "the act of drawing any instrument of exchange by a person who engages in the business of drawing such instruments as a service or for a fee or other consideration." (Ill. Rev. Stat. 1975, ch. 16½, par. 303.) The cashing of checks as a separate service is not referred to as being among the authorized activities of a licensee under the Sale of Exchange Act. Conversely, the business of cashing checks and charging a fee solely for that service falls squarely within the ambit of the currency exchange act. Without a license to operate a currency exchange, defendants cashed checks for a graduated fee as a service apart from the issuance of travelers checks or money orders. Such activities constituted violations of the currency exchange act. The two acts regulate two distinct activities, and defendants' license under the Sale of Exchange Act did not entitle them to perform the activities regulated solely under the currency exchange act.

■■ Defendants next contend that even if the currency exchange act is applicable to their check-cashing service, the trial court nevertheless erred in not finding that defendants fell within the statutory exemption permitted for retail merchants. That provision provides as follows:

> "Nothing in this Act shall be held to apply * * * to any person, firm, association, partnership or corporation engaged in the business of selling tangible personal property at retail who, in the course of such business and only as an incident thereto, cashes checks, drafts, money orders or other evidences of money." (Ill. Rev. Stat. 1975, ch. 16½, par. 31.)

The only evidence bearing on the point before the trial court was the stipulation that a certificate of registration had been issued to defendants by the Department of Revenue along with a sales tax number. Standing alone, that certificate and sales tax number were insufficient to establish either defendants' status as a retailer or the fact, required by the act, that the check-cashing service was conducted only as an incident to defendants' retail sales. In that regard, defendants' reliance upon *Heidelberger v. Jewel Companies, Inc.* (1974), 57 Ill. 2d 87, 312 N.E.2d 601, is misplaced. In that case Jewel was not required to obtain a license under the currency exchange act since it qualified for the retailer's exemption. The decision was based, among other reasons, upon the

incidental character of the check-cashing service as established for Jewel customers. There was no such evidence before the trial court in the present case.

■■ Defendants also argue that the currency exchange act, in prohibiting anyone other than licensed currency exchange operators from cashing checks for a fee as a separate service, constitutes a denial of equal protection and is unconstitutional. We do not agree.

The operation of such services is an activity affecting the public interest. State regulation of these services operates to protect the public by assuring that such businesses are financially stable, do not engage in prohibited activities, and are conducted as separate business units. The State has a legitimate interest in limiting check-cashing services to licensed currency exchanges. So long as they are reasonably related to the desired ends, the means chosen to protect the public welfare are within the discretion of the legislature. (See *Williamson v. Lee Optical Co.* (1955), 348 U.S. 483, 99 L. Ed. 563, 75 S. Ct. 461.) We find that the legislation here promulgated is reasonably related to the desired ends.

■■ Defendants finally contend that the complaints brought against them should have been dismissed because they were improperly signed and did not adequately set forth the elements of the offense.

Initially, we note that this argument is raised for the first time on appeal. Defendants therefore have waived any defects in the complaints. (See *People v. Bradford* (1975), 62 Ill. 2d 21, 338 N.E.2d 182.) Moreover, the complaints were signed by the acting supervisor of the Currency Exchange Department of the Department of Financial Institutions. It would appear that his position would entitle him to properly sign the complaints. As to the contents of the complaints, they adequately apprised defendants of the offense charged thus enabling them to present a well prepared defense. See *People v. Bravieri* (1974), 22 Ill. App. 3d 845, 318 N.E.2d 225.

For the reasons stated, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

JIGANTI, P. J., and McGILLICUDDY, J., concur.