CLIFFORD C. BEALS *et al.*, Plaintiffs-Appellants, v. STANLEY R. HUFFMAN *et al.*, Defendants-Appellees.

Fourth District    No. 4—85—0800

Opinion filed July 22, 1986.

McCULLOUGH, P.J., dissenting.

Glenn A. Braden, of Braden Law Offices, of Neoga, and James R. Harvey and James F. Jarrett, both of Effingham, for appellants.

Craig J. Causeman, of Thomas, Mamer & Haughey, of Champaign, for appellee Sarah Bush Lincoln Health System, Inc.

Richard F. Record, Jr., of Craig & Craig, of Mattoon, for appellee Stanley R. Huffman.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiffs brought an action in the circuit court of Coles County alleging that defendants committed medical malpractice. The court entered summary judgment in favor of defendants. Plaintiffs appeal. The facts follow.

On December 23, 1983, plaintiffs Clifford Beals (Beals) and his wife, Goldie Beals, filed a four-count complaint in the circuit court of Coles County against defendants, Dr. Stanley Huffman and Sarah Bush Lincoln Health System, Inc., also known as Area E-7 Hospital Association (hospital). Count I alleged that Dr. Huffman performed a surgical operation on Beals' esophagus in a negligent and unskillful manner causing injury to Beals. Count I specifically alleged, among other things, that Dr. Huffman carelessly and negligently punctured Beals' stomach wall during the course of the operation causing the contents of Beals' stomach to spill out into his body cavity. Count II alleged that the hospital, by and through the acts of its authorized agents and employees, committed negligent and unskillful acts in the treatment of Beals causing injury to him. The specific acts of negligence alleged to have been committed by the hospital were identical to the specific acts of negligence alleged to have been committed by Dr. Huffman. Count III incorporated the allegations of count I and alleged further that Dr. Huffman's negligence caused Goldie Beals to suffer the loss of society of her husband. Count IV incorporated the allegations of count II and alleged further that the hospital's negligence caused Goldie Beals to suffer the loss of society of her husband.

During the following months, defendants filed answers to the complaint. Several matters pertaining to discovery were also filed.

On June 18, 1984, Dr. Huffman filed a motion for summary judgment on counts I and III of the complaint. The affidavit of Dr. Huffman was attached to the motion. The affidavit stated in full as follows:

"I, STANLEY R. HUFFMAN, M.D., being first duly sworn, state under oath and depose that I am a duly licensed and actively practicing medical practitioner in the state of Illinois; that I am familiar on a first hand basis with the standards for physicians practicing in the Coles County area in December, 1981, dealing with complaints of the type described for Plaintiff, CLIFFORD C. BEALS, in the Complaint on file herein; that at all times in 1981 and 1982 at the time of professional contacts by me with CLIFFORD C. BEALS that I complied with said standard and that no act or omission on my part caused or contributed to cause any condition of ill being in the

body of CLIFFORD C. BEALS."

On July 6, 1984, the hospital filed a motion for summary judgment on counts II and IV of the complaint.

On October 22, 1984, the court entered an order granting each defendant's motion for summary judgment.

Also on October 22, 1984, Dr. Huffman filed his own sworn statement. After describing his academic and professional background, he made the following statements concerning his treatment of Beals.

Dr. Huffman stated that he first treated Beals on December 29, 1981, after Beals had been referred to him by his family physician. Beals had been experiencing difficulties in swallowing. On December 30, 1981, Dr. Huffman performed an upper-gastrointestinal endoscopic examination on Beals and determined that a stricture existed in Beals' esophagus. He diagnosed Beals' condition as reflexes esophagitis and columnar line esophagitis. He told Beals that the best treatment would be to open the stricture at the end of the esophagus. Dr. Huffman explained to Beals and his wife that an esophageal dilation involved the passage of progressively larger dilators through the esophagus. He informed Beals and his wife that the risks involved in an esophageal dilation included perforation, infection, and adverse reaction to drugs involved.

On January 2, 1982, Dr. Huffman performed an esophageal dilation on Beals. He passed progressively larger dilators (rubber tubes) through Beals' esophagus. Beals was conscious and alert during the entire procedure. After the completion of the procedure, Beals had a barium swallow. The barium swallow revealed that Beals had sustained a perforation at the far end of the esophagus during the esophageal dilation. Dr. Neuberger performed surgery to repair the perforation.

Dr. Huffman continued his treatment of Beals through January 12, 1982.

Dr. Huffman stated that he was familiar with the standards of care required of physicians performing esophageal dilations in Coles County and that he did not deviate from those standards of care. He denied each of the specific allegations of negligence contained in the complaint. He concluded the statement by stating that he provided proper care and treatment to Beals.

On October 25, 1984, plaintiffs filed a motion to vacate the order entering summary judgment in favor of defendants and a motion to reconsider that order. Plaintiffs argued that Dr. Huffman's affidavit consisted only of legal conclusions insufficient to entitle defendants to summary judgment. The court entered an order granting plaintiffs'

motions and vacating its order of October 22, 1984.

On November 2, 1984, a hearing was held. No record of that hearing was made.

On January 23, 1985, Dr. Huffman filed a renewed motion for summary judgment on counts I and III of the complaint. The sworn statement described earlier and plaintiffs' answer to interrogatory No. 24 were attached to the motion. Plaintiffs' answer to interrogatory No. 24 stated that plaintiffs knew of no medical professionals holding opinions critical of Dr. Huffman's treatment of Beals.

On the same date the hospital filed a renewed motion for summary judgment on counts II and IV of the complaint. The same documents attached to Dr. Huffman's motion were attached to the hospital's motion.

Beals filed his own affidavit in opposition to Dr. Huffman's motion for summary judgment stating that the facts alleged in the complaint were true. Plaintiffs also filed their own sworn statement describing Beals' treatment and their injuries.

On February 7, 1985, plaintiffs filed a notice of expert witness indicating that they had retained Dr. Ralph Gieselman as an expert witness. In opposition to defendants' motions for summary judgment, plaintiffs filed the affidavit of Dr. Gieselman. That affidavit stated in full as follows:

"I, [Ralph V. Gieselman, M.D.], being first duly sworn upon oath depose and state as follows:

1. That I am a physician licensed to practice medicine in the State of Missouri and I am Board Certified in Internal Medicine and Gastroenterology.

2. That I have reviewed the hospital records, x-rays and the sworn statements of Dr. Stanley Huffman and Clifford and Goldie Beals.

3. That said records and x-rays clearly demonstrate a perforation of the gastrointestinal tract of Clifford Beals.

4. That with proper care, perforation secondary to dilation of the esophagus in the area perforated on Clifford Beals is uncommon and occurs in less than one percent (1%) of cases so treated.

5. That most physicians undertaking the procedure of dilation of the esophagus would request that the patient have nothing to eat or drink after midnight preceding the procedure to lessen the risk of regurgitation and possible aspiration during the procedure.

6. That the fact that there were two perforations evident on

followup x-ray studies would indicate that there was not prudent passage of the dilators.

7. That the said records do not indicate that Clifford Beals was informed of possible complications of endoscopy and/or dilation.

8. That I would, if sworn as a witness, testify competently to the above."

On March 8, 1985, Dr. Huffman filed a motion to strike the affidavit of Dr. Gieselman. The motion alleged that Dr. Gieselman's affidavit did not comply with the requirements of Supreme Court Rule 191 (87 Ill. 2d R. 191), that the affidavit did not state a *prima facie* case of negligence against Dr. Huffman, and that paragraphs three and six of the affidavit were inconsistent.

On March 14, 1985, the hospital filed a motion to strike the affidavit of Dr. Gieselman. The motion adopted the grounds raised in Dr. Huffman's motion and alleged further that the affidavit did not state the Dr. Gieselman is familiar with the standards of care required of physicians and hospitals in the relevant geographic location and that defendants deviated from those standards of care.

On April 3, 1985, the hospital filed an addendum to its motion for summary judgment arguing that the deposition of Dr. Huffman reveals a lack of negligence on the part of the hospital and that plaintiffs' answers to certain interrogatories indicated that plaintiffs had not been able to secure an expert witness who could testify to the negligence of the defendants. A transcript of Dr. Huffman's deposition was attached to the addendum. In that deposition Dr. Huffman further explained his background and treatment of Beals. Dr. Huffman stated that although he was on the staff at the hospital, he was not an employee of the hospital. He stated that the equipment he used during his treatment of Beals was owned by the hospital and in proper working order. He stated that an endoscopy nurse was present during the endoscopic examination and that the esophageal dilation was performed entirely by himself. Dr. Huffman stated that he had no criticism of the actions taken by hospital employees during either procedure. As to the specific acts of negligence alleged to have been committed by the hospital in counts II and IV of the complaint, Dr. Huffman stated either that hospital employees acted properly or that hospital employees had no responsibility in the specific matter.

On April 8, 1985, a hearing was held on defendants' motions. Following the hearing, memoranda of law were submitted to the court by plaintiffs and Dr. Huffman.

On April 29, 1985, the court sent a letter to the parties express-

ing its intention to grant defendants' motions and setting forth its reasoning. The court explained that Dr. Gieselman's affidavit failed to show any negligence on the part of defendants and that "plaintiff's difficulties were due to inherent medical problems." On May 1, 1985, the court entered an order striking the affidavit of Dr. Gieselman and granting each defendant's motion for summary judgment.

On May 21, 1985, plaintiffs filed a motion to reconsider. Dr. Huffman filed a response to plaintiffs' motion. A hearing on the motion was held on September 3, 1985. In a letter to the parties dated October 2, 1985, the court expressed its intention to deny the motion to reconsider and set forth its reasoning. The court noted the lack of expert medical testimony and rejected plaintiffs' argument that this case involved *res ipsa loquitur* or fell within the exception to the requirement of expert medical testimony. On October 22, 1985, the court entered an order denying plaintiffs' motion to reconsider.

On November 20, 1985, plaintiffs filed a timely notice of appeal. On appeal plaintiffs argue that the circuit court erred in entering summary judgment in favor of defendants. Plaintiffs argue that Dr. Huffman's affidavit is insufficient to warrant summary judgment in his favor and that even if Dr. Huffman's affidavit is sufficient, Dr. Gieselman's affidavit is sufficient to overcome Dr. Huffman's motion for summary judgment and should not have been stricken. Alternatively, plaintiffs argue that this case involves *res ipsa loquitur* or falls within the "gross negligence" or "common knowledge" exception to the requirement of expert medical testimony as to the applicable standard of care. Plaintiffs have presented no specific arguments as to the propriety of the court's order granting summary judgment to the hospital.

■■ It is well established that summary judgment is appropriate in medical malpractice cases where there is no genuine issue as to any material fact and the party seeking summary judgment is entitled to judgment as a matter of law. (See *Bennett v. Raag* (1982), 103 Ill. App. 3d 321, 431 N.E.2d 48.) A motion for summary judgment should be granted only when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) The court has a duty to construe the evidence strictly against the moving party and liberally in favor of the nonmoving party. (*Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 491 N.E.2d 803.) While use of the summary-judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit, it is a

drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is free from doubt. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867; *Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 491 N.E.2d 803.

■ Plaintiff argues first that Dr. Huffman's own affidavit and his sworn statement are insufficient to entitle Dr. Huffman to judgment as a matter of law. A defendant must show facts entitling it to summary judgment, even if opposing documents are insufficient. (*Tansey v. Robinson* (1960), 24 Ill. App. 2d 227, 164 N.E.2d 272.) Dr. Huffman argues that plaintiffs' failure to object to the affidavit and sworn statement by motion to strike, or otherwise, in the circuit court constitutes a waiver of any arguments concerning the sufficiency of these documents on appeal. Plaintiffs state that they objected to the affidavit at the November 2, 1984, hearing, and that the trial court improperly refused to allow a transcript to be made of the hearing. Dr. Huffman has filed a motion to strike from plaintiffs' brief all statements concerning the November 2, 1984, hearing. We deny that motion since our decision rests on grounds other than principles of waiver. Plaintiffs' argument concerning the sufficiency of the affidavit would fail since a similar argument was raised and rejected in this court's recent opinion in *Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 491 N.E.2d 803.

In *Taylor* the decedent was admitted to the defendant hospital after suffering an epileptic seizure. During his hospital stay, decedent fell from his hospital bed and suffered a broken hip. More than one year later decedent died. Plaintiff, the administrator of the decedent's estate, filed a complaint alleging that the four named defendants, including Dr. R. A. Spencer, were responsible for the wrongful death of decedent. Dr. Spencer filed a motion for summary judgment, and the other three defendants joined in a motion for summary judgment. Dr. Spencer had attached to his motion his own affidavit as well as excerpts from the deposition of Dr. James M. Hayes. Dr. Spencer's affidavit stated that he was familiar with the standard of care in the geographic location and that the treatment and care rendered by him was in compliance with that standard. Dr. Hayes stated that based upon his familiarity with the degree of care required of a reasonable physician in the community, he had no criticism of defendant's care of the decedent. Attached to the motion for summary judgment filed by the other defendants was the affidavit of Mary C. Mulcahy. Mulcahy, assistant professor and director of the nursing program at Sangamon State University, stated that she had reviewed the records of the defendant hospital, that she was familiar with the degree of knowl-

38

edge, skill, and care required of hospitals and nursing staffs in the geographic location, and that it was her opinion that the employees of the defendant hospital met that standard of care under the circumstances.

■ On appeal this court held that summary judgment was properly granted to all defendants. We noted that the sufficiency of affidavits offered in support of or in opposition to a motion for summary judgment is governed by Supreme Court Rule 191. That rule provides in pertinent part:

> "Affidavits in support of and in opposition to a motion for summary judgment *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." (87 Ill. 2d R. 191(a).)

We rejected plaintiff's argument that the Mulcahy affidavit should not have been considered by the circuit court in ruling on the motion for summary judgment because it contained conclusions rather than facts. We stated that "[a]lthough the affiant could have disclosed more facts upon which her opinion was based, we nevertheless believe the affidavit is sufficient for purposes of the defendants' motions for summary judgment herein." (*Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 598, 491 N.E.2d 803, 813.) We noted further that the plaintiff failed to present any expert evidence to establish the applicable standard of care. Plaintiff maintained that Dr. Spencer's own assertion by affidavit was insufficient to establish the standard of care and should not have been considered by the circuit court. Rejecting plaintiff's argument, we stated:

> "The law, however, is clearly to the contrary. Illinois courts have repeatedly held that, where a defendant-doctor submits his own affidavit as evidence of the applicable standard of care in support for his motion for summary judgment, and *where the plaintiff has failed to bring forth evidence to the contrary even though afforded ample time to do so*, then such an affidavit is sufficient for entry of summary judgment in favor of the physician. *Goldstein v. Kantor* (1981), 101 Ill. App. 3d 624, 427 N.E.2d 1322; *Prather v. Decatur Memorial Hospital* (1981), 95 Ill. App. 3d 470, 420 N.E.2d 810; *Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003, 374 N.E.2d 1147; see also

*Heidelberger v. Jewel Co.* (1974), 57 Ill. 2d 87, 312 N.E.2d 601." (Emphasis added.) (142 Ill. App. 3d 584, 600, 491 N.E.2d 803, 814.)

Dr. Huffman's affidavit is similar in substance to the affidavits of Mulcahy and Dr. Spencer. For the same reasons as expressed in *Taylor*, we conclude that Dr. Huffman's affidavit and sworn statement are sufficient to support his motion for summary judgment.

■ We must next determine whether the affidavit of Dr. Gieselman is sufficient to overcome Dr. Huffman's motion for summary judgment. Where facts contained in an affidavit in support of a motion for summary judgment are not contradicted by a counteraffidavit, such facts are admitted and must be taken as true. (*Heidelberger v. Jewel Co.* (1974), 57 Ill. 2d 87, 312 N.E.2d 601; *Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 491 N.E.2d 803.) Plaintiffs argue that the affidavit of Dr. Gieselman contradicted the statements contained in Dr. Huffman's affidavit and should not have been stricken.

■ Dr. Huffman argues first that Dr. Gieselman's affidavit was properly stricken since it did not comply with Rule 191(a) requiring that sworn or certified copies of all papers on which the affiant relies be attached to the affidavit. Although it is true that the failure to attach to an affidavit the papers on which an affiant relies is a technical violation of Rule 191(a) (*Standard Oil Co. v. Lachenmyer* (1972), 6 Ill. App. 3d 356, 285 N.E.2d 497), technical interpretations of Rule 191(a) are not favored (see *Wainscott v. Penikoff* (1936), 287 Ill. App. 78, 4 N.E.2d 511), and technical insufficiencies in affidavits submitted to the court in support of or in opposition to a motion for summary judgment should be disregarded where it appears that the affiant would be a competent witness if called at trial (*LaMonte v. City of Belleville* (1976), 41 Ill. App. 3d 697, 355 N.E.2d 70). In the instant case it appears that Dr. Gieselman would be a competent witness if called at trial, and, therefore, the affidavit was improperly stricken on technical grounds.

Having concluded that Dr. Gieselman's affidavit was improperly stricken, we must now determine whether the affidavit is sufficient to overcome Dr. Huffman's motion for summary judgment. Defendant points to two problems with the affidavit which allegedly render it insufficient.

Defendant first points to an inconsistency in the affidavit wherein Dr. Gieselman states in paragraph three that the medical records and X rays reveal "a perforation" of Beals' gastrointestinal tract and in paragraph six "that there were two perforations evident on followup

x-ray studies." Any such inconsistency is unimportant since it is clear from the affidavit that at least one perforation existed in Beals' gastrointestinal tract.

Defendant argues second that Dr. Gieselman's affidavit does not establish the applicable standard of care and that Dr. Huffman violated that standard of care. Plaintiffs correctly argue that a plaintiff in a medical-malpractice action need not establish a *prima facie* case of negligence to overcome a defendant's motion for summary judgment. (See *Bennett v. Raag* (1982), 103 Ill. App. 3d 321, 431 N.E.2d 48.) However, where a plaintiff has failed to present evidence which would indicate expert medical opinion to sustain the allegations of the complaint as contrasted to affidavits filed by the defendant, or that plaintiff would be able to obtain such opinion in the future, then summary judgment in favor of the defendant is proper. (*Bennett v. Raag* (1982), 103 Ill. App. 3d 321, 431 N.E.2d 48.) In the instant case we believe that Dr. Gieselman's affidavit shows the existence of expert medical opinion to sustain the allegations of the complaint, or at least that plaintiff would be able to obtain such opinion. Paragraph four of Dr. Gieselman's affidavit states that, with proper care, perforation secondary to dilation of the esophagus is uncommon, and paragraph six indicates that Dr. Gieselman's opinion that there was not prudent passage of the dilators. Although these statements are not concrete allegations of medical malpractice, they are no less vague than the statements contained in Dr. Huffman's affidavit. While Dr. Huffman's affidavit and sworn statement are technically sufficient to support his motion for summary judgment, the vague nature of those documents certainly affect the weight to be accorded to them. We believe that after comparing the affidavits and other documents, Dr. Gieselman's affidavit is sufficient to overcome Dr. Huffman's motion for summary judgment. In this regard, the instant case is distinguishable from *Taylor*. In *Taylor* the plaintiff presented nothing to support the allegations of the complaint or to show the applicable standard of care. The plaintiff in the instant case has at least presented expert medical opinion to the effect that Dr. Huffman did not pass the dilators in a prudent fashion.

■ Furthermore, it can be said a disputed issue of material fact exists precluding the entry of summary judgment in favor of Dr. Huffman. Dr. Gieselman's statement that there was not prudent passage of the dilators contradicts Dr. Huffman's statement that he was careful in passing the dilators through Beals' esophagus. Such a contradiction creates a disputed issue of material fact.

For these reasons, we conclude that the circuit court improperly

granted summary judgment to Dr. Huffman on counts I and III and remand for further proceedings. Having so concluded, we need not consider plaintiffs' arguments concerning *res ipsa loquitur* and the "gross negligence" or "common knowledge" exception to the requirement of expert medical testimony as to the applicable standard of care.

■ We now turn our attention to the propriety of the circuit court's order granting summary judgment to the hospital on counts II and IV of the complaint. Plaintiffs have apparently abandoned their appeal in this regard. Plaintiffs' briefs state only that the circuit court erred in entering summary judgment in favor of all defendants. Plaintiffs did not specifically address this issue either in their briefs or at oral arguments. Contentions of error assigned on appeal but not argued are deemed to have been waived and abandoned. (*Meyer v. Hendrix* (1941), 311 Ill. App. 605, 37 N.E.2d 445.) Even if plaintiffs' contention had not been waived, it would fail on the merits.

■ A hospital may be liable for injuries suffered by a patient under its care on two distinct theories: (1) the hospital may be liable for its physician-agent's misconduct, and (2) the hospital may be held liable for a violation of an independent duty owed by the hospital to review and supervise medical care administered to a patient. (*Ingram v. Little Co. of Mary Hospital* (1982), 108 Ill. App. 3d 456, 438 N.E.2d 1194.) In the instant case the hospital, through the deposition of Dr. Huffman, set forth uncontradicted facts entitling it to judgment as a matter of law.

■ Plaintiffs' complaint contains no allegation that Dr. Huffman is an agent of the hospital. The purported negligence of a doctor in treating a patient cannot be imputed to a hospital (*Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 399 N.E.2d 198; *Hundt v. Proctor Community Hospital* (1972), 5 Ill. App. 3d 987, 284 N.E.2d 676). Plaintiffs failed to present contradictory facts to show that Dr. Huffman was an agent of the hospital and therefore summary judgment could be entered in favor of the hospital.

■ Plaintiffs' complaint alleges that the hospital committed four specific acts of negligence: (1) carelessly and negligently treated Beals; (2) carelessly and negligently punctured Beals' stomach; (3) carelessly and negligently failed to advise Beals of the risks of the given procedures; and (4) carelessly and negligently failed to use appropriate tests to determine the position of Beals' stomach. Dr. Huffman stated that informing the patient of risks and determining the position of plaintiff's stomach is the physician's responsibility. Such statements are sufficient to support the hospital's motion with respect

to the third and fourth allegations of counts II and IV. (Compare *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 435 N.E.2d 877 (noting that it is the physician's responsibility to inform a patient of risks so that he may make a decision regarding consent.).) Dr. Huffman stated further that although hospital employees assisted him in preparing Beals for the procedures, they did not perform any of the procedures. Dr. Huffman stated that he had no criticism of the actions taken by hospital personnel. Under the circumstances herein, these statements are sufficient to support the hospital's motion for summary judgment with respect to the first and second allegations of counts II and IV. (See *Conrad v. Christ Community Hospital* (1979), 77 Ill. App. 3d 337, 395 N.E.2d 1158 (court held that summary judgment was appropriate where defendant's expert stated that he had no criticism of actions taken by hospital); but see *Smith v. St. Therese Hospital* (1982), 106 Ill. App. 3d 268, 435 N.E.2d 939 (defendant doctor's statement that he had no criticism of actions taken by hospital employees held insufficient to entitle hospital to judgment as a matter of law).) Because plaintiffs presented no evidence to contradict the hospital's motion and Dr. Huffman's deposition so far as it related to the hospital, no disputed issue of material fact exists, and the hospital is entitled to judgment as a matter of law. The circuit court committed no error in granting summary judgment to the hospital on counts II and IV of the complaint.

In sum, we affirm that part of the circuit court's order granting summary judgment to the hospital on counts II and IV of the complaint. We reverse that part of the circuit court's order granting summary judgment to Dr. Huffman on counts I and III of the complaint and remand the cause for further proceedings.

Affirmed in part, reversed in part, and remanded.

MORTHLAND, J., concurs.

PRESIDING JUSTICE McCULLOUGH, dissenting:
The trial court was correct.

The supreme court's recent decision in *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867, persuades me to believe that the trial court was correct in its rulings granting summary judgment to both the doctor and the hospital. Although the affidavits of both the plaintiffs' expert and the defendant doctor are conclusory in nature, as the majority states, the affidavits should be admitted for purposes of the motion for summary judgment. *Taylor v. City of Beardstown* (1986),

142 Ill. App. 3d 584, 491 N.E.2d 803.

The plaintiffs' affidavit, being the affidavit of Dr. Gieselman, is not sufficient to overcome the defendants' motion for summary judgment. It does not appear that the plaintiffs' expert's affidavit contradicts the statements made in the defendant doctor's affidavit. Paragraph 4 of the Gieselman affidavit states that perforation secondary to dilation occurs in less than 1% of the cases so treated. This particular provision in itself is a conclusion and states nothing which helps the plaintiff.

Paragraph 6 of Gieselman's affidavit alleges that there were two perforations on the followup X rays and indicates there was not prudent passage of the dilators. The affidavit does not say that it was the fault of the defendant doctor. There also is nothing in the plaintiffs' expert's affidavit which would establish the applicable standard of care that the defendant doctor violated. The plaintiffs have not presented medical opinion testimony which would be sufficient to sustain the allegations of the complaint as contrasted to the affidavit filed by the defendants.

The plaintiffs' expert's affidavit nowhere states that the defendant doctor did anything wrong. As stated in *Purtill v. Hess* (1986), 111 Ill. 2d 229, 241-42, 489 N.E.2d 867, 872:

> "In a negligence medical malpractice case, the burden is on the plaintiff to prove the following elements of a cause of action: the proper standard of care against which the defendant physician's conduct is measured; an unskilled or negligent failure to comply with the applicable standard; and a resulting injury proximately caused by the physician's want of skill or care."

The plaintiffs' affidavit does not establish this proper standard of care to measure the defendant doctor's conduct and it also does not assert any unskilled or negligent failure to comply with the applicable standard, if any. In *Purtill*, the plaintiff's expert affidavit stated that the doctor was familiar with "the minimal standards of acceptable medical care diagnosis, and treatment for Carol L. Purtill's condition of ill-being as it existed." The affidavit further stated that those minimal standards were uniform throughout the United States wherever patients similar to Carol L. Purtill were examined, cared for, and treated for the condition of ill-being similar to that suffered by Carol L. Purtill. The affidavit then indicated that the doctor had reviewed the records, diagnosis, care, and treatment of the plaintiff received from the defendant doctor. The doctor's expert said, to a reasonable degree of medical certainty that such diagnosis, care, and treatment

were not in accordance with those uniform minimum standards and that this deviation from the accepted standard of care resulted in injury to the plaintiff. The affidavit further set forth specific instances in which the defendant doctor was negligent in the diagnosis and treatment. As stated in *Purtill*:

> "If a party moving for summary judgment supplies facts which, if not contradicted, would entitle such party to a judgment as a matter of law, the opposing party cannot rely on his pleadings alone to raise issues of material fact. *** Thus, facts contained in an affidavit in support of a motion for summary judgment which are not contradicted by counteraffidavit are admitted and must be taken as true for purposes of the motion." *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240-41, 489 N.E.2d 867, 871-72.

The supreme court in *Purtill* referred to *Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060, 458 N.E.2d 1072, and stated that in *Bartimus*:

> "Plaintiff's expert admitted a lack of knowledge of the standard of care applicable to physicians in the Paxton area or in similar communities, as well as a lack of familiarity with Paxton Community Hospital and its facilities." *Purtill v. Hess* (1986), 111 Ill. 2d 229, 243-44, 489 N.E.2d 867, 873.

The plaintiff's expert in *Bartimus* did testify, however, that according to "minimum standards across the country" the defendant physician's conduct deviated from those minimum standards. The appellate court set forth the requirement that prior to the introduction of an expert witness's testimony, a foundation must be paid which demonstrates that the witness is familiar with the standard of care applicable to a defendant's position. This foundation mandates an affirmative showing that the witness is familiar with medical practice in a community similar to that where the defendant physician practices.

Supreme Court Rule 191, *Purtill*, *Taylor*, *Bartimus* and *Heidelberger*, all support the trial court's order in the instant case.