FRED LOOS, d/b/a Loos Farm Supply, Plaintiff-Appellant, v. AMERICAN ENERGY SAVERS, INC., Defendant (Benjamin & Associates, Inc., *et al.*, Defendants-Appellees).

Fourth District No. 4—87—0706

Opinion filed April 21, 1988.

Kent R. Schnack, of Loos, Schnack & Siebers, of Quincy, for appellant.

Jerry L. Brennan, of Keefe, Gorman & Brennan, of Quincy, for appellee Benjamin & Associates, Inc.

Mark W. Boswell, of De Kalb Corporation, of De Kalb, and Delmer R. Mitchell, of Schmeideskamp, Robertson, Neu & Mitchell, of Quincy, for appellee Lindsay Manufacturing Company, Inc.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff appeals trial court orders dismissing both counts of his cause of action against Benjamin & Associates, Inc. (Benjamin), for lack of personal jurisdiction and granting summary judgment to Lindsay Manufacturing Company, Inc. (Lindsay), on his products liability

claim. Plaintiff contends Benjamin had sufficient contacts with Illinois to support personal jurisdiction and material issues of fact exist precluding summary judgment in favor of Lindsay.

We affirm.

Plaintiff purchased a wind energy generator system from American Energy Savers, Inc. (American), a Nebraska-based corporation. While the generator was in use, the main tower support legs buckled, causing the system to collapse into plaintiff's grain bin. Plaintiff brought a products liability action against American, alleging that it was the manufacturer of the system which was not reasonably safe in that: (a) its tower support legs were of inadequate strength as designed; (b) its tower support legs were of inadequate strength as manufactured; and (c) American failed to warn plaintiff that the support legs were subject to buckling. Plaintiff alleged Lindsay, a foreign corporation, had manufactured the tower support legs which were not reasonably safe thereafter because: (a) the tower support legs as manufactured were of inadequate strength; (b) the tower legs as designed were of inadequate strength; and (c) Lindsay failed to warn plaintiff that the tower support legs were subject to buckling. Plaintiff also alleged Lindsay knew or should have known that the legs were not reasonably safe.

Plaintiff alleged Benjamin, a foreign corporation, was an engineering firm which performed engineering services for American. It tested and analyzed the main tower support legs of the wind generator. Plaintiff alleged that Benjamin did not use reasonable care and skill in testing the main tower support legs. As a result of this negligence, the tower support legs buckled and collapsed, causing plaintiff's injuries.

Judgment was entered against American, and it is not a party to this appeal. Benjamin entered a special appearance contesting personal jurisdiction over it. In an affidavit Benjamin stated its sole place of business was Nebraska. It did not solicit business in Illinois, had no employees in Illinois, and no office in Illinois. It had never transacted business in Illinois. Its principal occupation is engineering work. It did not supply any component parts for the wind energy generating system nor did it place the system in the stream of commerce. The trial court dismissed Benjamin.

Lindsay filed a motion for summary judgment. In an affidavit, Lindsay stated that it did not design the tower or the wind energy generating equipment. It built the tower according to the specifications supplied by American and never knew the design of the wind generator which American placed on the tower. Lindsay was never

supplied with information needed to test the appropriateness of the use of the tower in the final system. American did not request it to do so. It did not have any knowledge of a defect concerning the tower support legs.

The trial court granted Lindsay summary judgment, noting that it did not design the tower or manufacture the turbine. It built the tower according to the specifications of American and had no knowledge of the size, shape, weight, torque, or load characteristics of the wind generator. The court also found that when the tower left Lindsay it was not in a defective condition. The court found Lindsay had no knowledge of any defect and therefore had no duty to warn the prospective purchaser.

■■ ■ Initially, plaintiff argues assertion of personal jurisdiction over Benjamin comports with due process. A two-step analysis must be engaged in prior to sustaining the exercise of personal jurisdiction over a nonresident defendant pursuant to section 2—209(a)(2) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—209(a)(2)). Plaintiff must show: (1) defendant committed a tortious act within Illinois; (2) his cause of action arose from the act; and (3) personal jurisdiction is consistent with due process. (*R. W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 489 N.E.2d 1360; *Wiles v. Morita Iron Works Co.* (1987), 152 Ill. App. 3d 782, 504 N.E.2d 942.) Plaintiff need only make a *prima facie* showing that jurisdiction exists. All undenied, well-pleaded allegations in his complaint must be accepted as true. (*Mandalay Associates Ltd. Partnership v. Hoffman* (1986), 141 Ill. App. 3d 891, 491 N.E.2d 39.) Where jurisdiction is contested, the burden of establishing it rests on the plaintiff. (*R. W. Sawant,* 111 Ill. 2d 304, 489 N.E.2d 1360; *Ballard v. Rawlins* (1981), 101 Ill. App. 3d 601, 428 N.E.2d 532.) However, the court must accept as true the facts contained in an uncontested affidavit denying jurisdiction. *Professional Group Travel, Ltd. v. Professional Seminar Consultants, Inc.* (1985), 136 Ill. App. 3d 1084, 483 N.E.2d 1291.

Here, the parties do not contest the issue of whether a tortious act occurred in Illinois. Therefore, the question to be resolved is whether sufficient contact exists between Benjamin and Illinois to make the assertion of jurisdiction over Benjamin reasonable.

Defendant Benjamin agrees the trial court had before it an unverified complaint and two affidavits filed by defendant Benjamin. The unsworn complaint did not allege defendant was doing business in Illinois or that defendant knew the generator would be sold in Illinois. We agree.

On the basis of the affidavit presented, Benjamin did not have any contact with Illinois. Plaintiff argues that Benjamin sold its negligently performed services to a nationwide firm so should have been aware that the resultant defective product could reach Illinois, causing injury. Plaintiff asserts the above circumstance coupled with the convenience of litigating in Illinois are sufficient to comport with due process. He analogizes the instant situation placing a defective product in the stream of commerce.

 █ Purposeful conduct directed toward the forum State which invokes its benefits and protections is sufficient to sustain jurisdiction over a nonresident defendant. Such conduct constitutes minimum contacts with the State. However, a defendant's mere awareness that the stream of commerce may cause his product to enter the forum State does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum State. (*Asahi Metal Industry Co. v. Superior Court of California* (1987), 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026.) Here, no purposeful contact between Illinois and Benjamin has been shown. Therefore, the trial court correctly dismissed Benjamin for lack of personal jurisdiction. *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155.

Plaintiff next argues the trial court erred in granting summary judgment to Lindsay. Plaintiff concedes the court was correct in granting summary judgment on his allegations of improper design and failure to warn, but argues Lindsay is responsible for manufacturing support legs of inadequate strength.

██ Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Materials will be construed most favorably to the nonmovant. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867; *Heman v. Jefferson* (1985), 136 Ill. App. 3d 745, 483 N.E.2d 537; *Zanzig v. H. P. M. Corp.* (1985), 134 Ill. App. 3d 617, 480 N.E.2d 1204.) Where facts contained in an affidavit in support of a motion for summary judgment are not contradicted by another affidavit, such facts are admitted and must be taken as true. *Beals v. Huffman* (1986), 146 Ill. App. 3d 30, 496 N.E.2d 281.

██ To recover under a strict liability theory, plaintiff must prove (1) his injury resulted from a condition of the product, (2) the condition was unreasonably dangerous, and (3) the condition existed at the time the product left the manufacturer's control. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182; *Ralston v. Casanova*

(1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444.) A component part manufacturer may be found strictly liable for the injuries attributable to the defective component. *Suvada*, 32 Ill. 2d 612, 210 N.E.2d 182.

■■ On defendant's motion for summary judgment, the plaintiff's failure to allege evidentiary facts which would create an issue about whether the alleged unreasonably dangerous condition of the product existed at the time the product left the defendant's control leaves defendant's affidavits uncontradicted. (*Beals*, 146 Ill. App. 3d 30, 490 N.E.2d 281; *Gasdiel v. Federal Press Co.* (1979), 78 Ill. App. 3d 222, 396 N.E.2d 1241.) A manufacturer is not an insurer of its product. It is under no duty to make sure the product is incapable of causing injury under any circumstances. An inference of a defective product may not be drawn from the mere fact that an injury occurred. *Curry v. Louis Allis Co.* (1981), 100 Ill. App. 3d 910, 427 N.E.2d 254.

In the instant case, plaintiff essentially alleged the tower support legs were of inadequate strength as used in the wind generating system. Plaintiff did not allege that they were improperly machined or defectively manufactured in any other way. Unsworn reports in the record indicate that the tower legs were not strong enough to support the total wind generating system.

Defendant filed a summary judgment motion. In support of the motion, Cliff Loseke, Lindsay's vice-president for manufacturing, in an affidavit attested Lindsay manufactured the tower according to the specifications provided by American. It was not asked to test its appropriateness in light of its intended use in the total system. It was not provided with any information from which it could judge whether the strength of the tower would be appropriate in all circumstances.

■■ ■ A manufacturer of a component part has no control over that part once it is sold and no control over its use in the final assembly of the machine. (*Curry*, 100 Ill. App. 3d 910, 427 N.E.2d 254.) A component part manufacturer is not obligated to anticipate how a nondangerous part may become unreasonably dangerous as used in the final assembly. Since plaintiff has not contradicted defendant's affidavit, summary judgment was properly entered. (*Curry*, 100 Ill. App. 3d 910, 427 N.E.2d 254.) Lindsay is not responsible for the use to which American put the tower.

Lindsay argues that it was justified in relying on the specifications provided by American. Lindsay contends it should not be liable for the inappropriateness of the tower for its intended use. Illinois has not directly addressed this issue in the products liability setting. In a negligence setting, the independent contractor does not owe a duty to third persons to evaluate the safety of a part which he contracts to

build according to specifications. If the contractor carries out the specifications, he may rely on their soundness, unless they are obviously dangerous. *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368.

■■■ Other jurisdictions have utilized the above principles in products liability settings. (*S. A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co.* (9th Cir. 1982), 690 F.2d 1235; *Lesnefsky v. Fischer & Porter Co.* (E.D. Pa. 1981), 527 F. Supp. 951; *Orion Insurance Co. v. United Technologies Corp.* (E.D. Pa. 1980), 502 F. Supp. 173.) Absent a failure to manufacture according to specifications, it is actually a design problem which causes the defect in the component. We agree that a component part manufacturer which does not design the component is thus not responsible for injuries caused by its defective design.

For the above reasons, we affirm the trial court.

Affirmed.

GREEN, P.J., and KNECHT, J., concur.